1   MORGAN, LEWIS & BOCKIUS LLP
    JOHN S. BATTENFELD, SBN 119513
2   300 South Grand Avenue
    Twenty-Second Floor
3   Los Angeles, CA  90071-3132
    Tel:  213.612.2500
4   Fax:  213.612.2501
    email: jbattenfeld@morganlewis.com
5
    MORGAN, LEWIS & BOCKIUS LLP
6   JENNIFER WHITE-SPERLING, SBN 166504
    5 Park Plaza, Suite 1750
7   Irvine, CA 92614
    Tel:  949.399.7000
8   Fax:  949.399.7001
    email: jwhite-sperling@morganlewis.com
9
    MORGAN, LEWIS & BOCKIUS LLP
10  M. MICHAEL COLE, SBN 235538
    One Market
11  Spear Street Tower
    San Francisco, CA 94105
12  Tel:  415.442.1000
    Fax: 415.442.1001
13  email: mcole@morganlewis.com

14  Attorneys for Defendants New York Life Insurance
    Company and New York Life Insurance and Annuity
15  Corporation

16

17                 UNITED STATES DISTRICT COURT

18               NORTHERN DISTRICT OF CALIFORNIA

19  OLGA ORTMANN, as an individual and on      Case No.  **C 07 - 2506**
    behalf of all others similarly situated,
20                                              **DEFENDANTS NEW YORK LIFE
              Plaintiff,                         INSURANCE COMPANY AND NEW
21                                              YORK LIFE INSURANCE AND ANNUITY
         v.                                     CORPORATION'S NOTICE OF
22                                              REMOVAL OF ACTION TO THE UNITED
    NEW YORK LIFE INSURANCE                     STATES DISTRICT COURT FOR THE
23  COMPANY, a corporation; NEW YORK           NORTHERN DISTRICT OF CALIFORNIA
    LIFE INSURANCE AND ANNUITY
24  CORPORATION, a corporation; and DOES 1
    through 20, inclusive,
25
              Defendants.
26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  LOS ANGELES     1-LA/937938.1

_____
                        DEFENDANTS' NOTICE OF REMOVAL

ORIGINAL
FILED
MAY 1 9 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

JL

1    DEFENDANTS NEW YORK LIFE INSURANCE COMPANY ("NYLIC") and NEW

2    YORK LIFE INSURANCE AND ANNUITY CORPORATION ("NYLIAC") (collectively, the

3    "Defendants") give notice that this case is hereby removed from the Superior Court of the State of

4    California for the County of Alameda, to the United States District Court for the Northern District

5    of California.  Defendants remove this matter pursuant to 28 U.S.C. Section 1332(d), 28 U.S.C.

6    Section 1441, 28 U.S.C. Section 1446, and 28 U.S.C. Section 1453, and state that this Court has

7    jurisdiction over the action pursuant to the Class Action Fairness Act of 2005.

8         As and for their Notice of Removal, Defendants plead as follows:

9         1.    This lawsuit is a civil action within the meaning of the Acts of Congress relating to

10    removal of class actions.  *See* 28 U.S.C. § 1453.

11         2.    Plaintiff Olga Ortmann instituted this civil action in the Superior Court of the State

12    of California for the County of Alameda, on or about March 26, 2007, against Defendants New

13    York Life Insurance Company and New York Life Insurance and Annuity Corporation, which

14    action was assigned Case Number RG 07317476 in said court.

15         3.    This action was therefore commenced after the effective date of the Class Action

16    Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), *codified at* 28 U.S.C.

17    §§ 1332(d), 1453 and 1711-1715.

18         4.    The Summons, Complaint, and Civil Case Cover Sheet were served upon

19    Defendants on April 10, 2007, by process server.  True and correct copies of the documents are

20    attached hereto as <u>Exhibit A</u>.

21         5.    On or about April 10, 2007, the Superior Court issued a Notice of Hearing for

22    Complex Determination Hearing set for May 11, 2007 and Case Management Conference set for

23    June 11, 2007.  A true and correct copy of this Notice of Hearing is attached hereto as <u>Exhibit B</u>.

24         6.    No other proceedings have been held in this action and the Summons, Complaint,

25    Civil Case Cover Sheet, and the Notice of Hearing (attached hereto as Exhibits A and B)

26    constitute all process, pleadings and orders filed in this case.

27         7.    Because this Notice of Removal is filed within thirty days of service of the

28    Summons, Complaint and Civil Case Cover Sheet upon the Defendants, it is timely under

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-LA/937938.1                           2

1    28 U.S.C. § 1446(b) and 28 U.S.C. § 1453.

2        8.    This action was brought by a putative representative person on behalf of a

3    proposed class of individuals. Ex. A, ¶¶ 1, 2, 10. As such, this matter is a purported class action

4    as that term is defined pursuant to 28 U.S.C. § 1332(d)(1)(B) and 28 U.S.C. § 1453.

5        9.    This action originally could have been filed in this Court under

6    28 U.S.C. § 1332(d) because this matter was brought as a class action, complete diversity of

7    citizenship exists between one or more members of the putative class and Defendants, and the

8    amount in controversy exceeds, in the aggregate, $5,000,000 exclusive of interest and costs.

9    Removal is therefore proper pursuant to 28 U.S.C. §§ 1446 and 1453.

10   **I.    DIVERSITY OF CITIZENSHIP EXISTS**

11       10.    Defendants are informed and believe that Plaintiff Olga Ortmann was at the

12   institution of this civil action, and was at all times intervening, a citizen and resident of

13   California. Ex. A, ¶ 11.

14       11.    Defendant NYLIC is, and was at the time of the institution of this civil action, a

15   mutual life insurance company organized and existing under and by virtue of the laws of the State

16   of New York, having its principal place of business (where the majority of its executive and

17   administrative functions are performed) in the State of New York, and therefore is a citizen of

18   New York for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

19       12.    Defendant NYLIAC is, and was at the time of the institution of this civil action, a

20   corporation organized and existing under and by virtue of the laws of the State of Delaware,

21   having its principal place of business (where the majority of its executive and administrative

22   functions are performed) in the State of New York, and therefore is a citizen of Delaware and

23   New York for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

24       13.    Defendants' business activities do not substantially predominate in any one state,

25   and the amount of Defendants' business activity in California is not significantly larger than in

26   other states in which they conduct business.

27       14.    As a result, Defendants are not now, and were not at the time of the filing of the

28   Complaint, citizens of the State of California within the meaning of the Acts of Congress relating

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-LA/937938.1

3

DEFENDANTS' NOTICE OF REMOVAL

1  to the removal of causes.

2      15.    Based upon information and belief and the allegations in the Complaint, therefore,

3  at least one member of the proposed class of plaintiffs (Ortmann) is a citizen of a state different

4  from Defendants.

5  **II.    AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED**

6      16.    Pursuant to CAFA, the claims of the individual members in a class action are

7  aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.

8  *See* 28 U.S.C. § 1332(d)(6).

9      17.    In addition, Congress intended for federal jurisdiction to be appropriate under

10  CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the

11  plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g.,

12  damages, injunctive relief, or declaratory relief)."  (Senate Judiciary Report, S. REP. 109-14,

13  at 42.)

14      18.    The Complaint seeks relief on behalf of a defined putative class of "all persons

15  who, since March 26, 2003, have been or currently are employed in California by Defendants as

16  "insurance agent" employees or common law employees.  As used in this Class Definition, the

17  term "insurance agent" refers to any individual whose primary assigned duties include or

18  included, but but[sic] neither were nor are limited to, insurance sales carried out pursuant to the

19  "Training Allowance Subsidy Plan Agreement" and/or the "agent's contract." Ex. A, ¶ 15.

20  Defendants has had approximately 1,500 agents under the Training Allowance Subsidy Plan

21  Agreement ("TAS Agents") alone in California from March 26, 2003 to the present.

22      19.    Plaintiff's Complaint purports to allege multiple claims on behalf of herself and

23  putative class members for, among other things, the following categories of monetary damages

24  under California law: (a) unpaid minimum wages; (b) unpaid overtime compensation; (c)

25  premium pay for missed meal and rest periods; (d) penalties for failure to provide accurate,

26  itemized wage statements; (e) waiting time penalties; and (f) attorneys' fees. Ex. A, ¶¶ 25-28, 32-

27  35, 47-48, 54-58, and Prayer for Relief ¶¶ 1-13.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-LA/937938.1                                              4

20.    Plaintiff alleges claims on behalf of herself and the putative class for unpaid overtime wages pursuant to California Labor Code Section 1194. Ex. A, ¶¶ 32-34. Specifically, Plaintiff alleges that she and proposed class members "are entitled to one and a half (1½) times and/or double their regular rate of pay for overtime worked during the four (4) years preceding the filing of [the] Complaint."

21.    Under California Industrial Welfare Commission Wage Order No. 4-2001, the minimum wage during the majority of the applicable time period was $6.75 per hour. Thus, by way of example, according to Plaintiff's theory of damages, the putative class's claim for two hours of unpaid overtime wages each week would be approximately 416 hours x $10.13/hour x 1,500 putative class members = $6,321,120.00.

22.    Plaintiff alleges claims on behalf of herself and the putative class for violations of California Labor Code Section 226.7 for meal and rest period violations. Ex. A, ¶¶ 47-48. Specifically, Plaintiff alleges that "Defendants routinely interrupted and/or failed to permit, authorize and/or provide Plaintiff and members of the Plaintiff class with meal and rest breaks," as required by Labor Code Section 226.7.

23.    Plaintiff further alleges that she and the putative class members "are entitled to recovery under Labor Code § 226.7(a) in an amount of one additional hour of pay at the employee's regular rate of compensation for each work day that a meal and rest period was not provided." Ex. A, ¶ 48.

24.    Accordingly, under Plaintiffs' theory of the case (which Defendants strenuously deny), the potential aggregate penalties under Section 226.7 for three alleged meal or rest period violations each week per putative class member for one year of alleged employment could be as follows: 1,500 putative class members x $6.75 (one hour of pay) x 3 days/week x 52 weeks = $1,579,500.00.

25.    The Complaint also alleges that Defendants violated Labor Code Section 226 by failing to provide her and members of the putative class with itemized wage statements. Ex. A, ¶ 54.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

26.     Labor Code section 226 states that an injured employee can recover up to an aggregate penalty of $4,000.  Thus, under Plaintiff's theory of the case, the potential aggregate penalties under Section 226 for 1,500 putative class members could be $6,000,000.00 for that claim alone.

27.     Further, Plaintiff seeks to represent putative class members who are former employees of Defendants and who allegedly did not to receive all wages due upon termination of their relationship with Defendants. Ex. A ¶ 50. Plaintiff alleges claims for "waiting time" penalties pursuant to Labor Code Section 203 on behalf of the putative subclass. Ex. A, ¶ 50. Labor Code Section 203 provides for a penalty of up to 30 days of daily wages.  Applying the bare minimum amount of the mandatory minimum wage of $6.75 per hour, at 8 hours per day, for thirty days, that would be a total of $1,620.00 per former employee, according to Plaintiff's theory of the case.   Of the approximately 1,500 TAS Agent putative class members, approximately 1132 are no longer under a TAS contract.  Therefore, under Plaintiff's theory of the case, if he could recover maximum waiting time penalties of 30 days of daily wages for approximately 1132 members of the putative subclass, the aggregate recovery would be $1,833,840.00.

28.     Plaintiff also claims that, pursuant to the Labor Code and California Industrial Welfare Commission Wage Order No. 4-2001, Defendants failed to pay Plaintiff and the putative class minimum wages as required by law. Ex. A, ¶ 26.   Plaintiff also seeks recovery for the putative class under Labor Code Section 2802 for reimbursement of necessary expenditures and illegal wage deductions. Ex. A, ¶¶ 39-42. Plaintiff also seeks recovery for the common law tort of conversion. Ex. A, ¶¶ 70-78. Plaintiff seeks exemplary and punitive damages and attorneys' fees for the putative class members under various laws. See, e.g., Ex. A, Prayer for Relief, ¶¶ 9, 12, 13.

29.     Thus, although Defendants deny Plaintiff's factual allegations or that she or the putative class are entitled to the relief for which she has prayed, based on Plaintiff's allegations and prayer for relief, the amount in controversy clearly exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-LA/937938.1                                          6

DEFENDANTS' NOTICE OF REMOVAL

**III.    THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED**

30.    As set forth above, this Notice of Removal is filed within thirty days of service of the Summons and Complaint upon Defendants.

31.    Defendants will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

32.    Defendants have sought no similar relief.

33.    The prerequisites for removal under 28 U.S.C. §§ 1441 and 1453 have been met.

34.    Because this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332(d), removal of this action is proper pursuant to 28 U.S.C. § 1441.

**WHEREFORE,** Defendants, desiring to remove this case to the United States District Court for the Northern District of California, pray that the filing of this Notice of Removal shall effect the removal of the suit to this Court.

Dated: May 10, 2007

MORGAN, LEWIS & BOCKIUS LLP
JOHN S. BATTENFELD
JENNIFER WHITE-SPERLING
M. MICHAEL COLE

By _____
M. Michael Cole
Attorneys for Defendants
New York Life Insurance Company and
New York Life Insurance and Annuity
Corporation

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-LA/937938.1                                    7

DEFENDANTS' NOTICE OF REMOVAL

**EXHIBIT A**

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/10/2007
Log Number 512119606

TO:     Michael DeMicco
        New York Life Insurance Company
        51 Madison Avenue
        New York, NY, 10010

RECEIVED

APR 12 2007

OFFICE OF THE GENERAL COUNSEL
LITIGATION SECTION

RE:     **Process Served in California**

FOR:    New York Life Insurance Company (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Olga Ortmann, as an individual and on behalf of all others similarly situated, Pltf. vs. New York Life Insurance Company, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet, Exhibit |
| **COURT/AGENCY:** | Alameda County, Oakland, Superior Court, CA<br>Case # RG07317476 |
| **NATURE OF ACTION:** | Employee Litigation - Class Action - Failure to pay minimum wages - Failure to pay overtime wages - Failure to allow and pay for meal and rest breaks - Failure to pay compensation at time of termination - Failure to provide an accurate itemized wage statement - Seeking injunctive relief, enjoining defendants from continuing with the wrongful and ongoing business practices - Seeking declaratory relief, declaring defendants practices as unlawful and unfair business practices |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/10/2007 at 11:17 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response |
| **ATTORNEY(S) / SENDER(S):** | Stanley D. Saltzman<br>Marlin & Saltzman<br>29229 Canwood Street<br>Suite 208<br>Agoura Hills, CA, 91301-1555<br>818-991-8080 |
| **ACTION ITEMS:** | Telephone, Michael DeMicco , 212-576-4452<br>SOP Papers with Transmittal, via Fed Ex 2 Day, 791273402260 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Dianne Christman<br>818 West Seventh Street<br>Los Angeles, CA, 90017<br>213-337-4615 |

Page 1 of  1 / VI

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

4/10/07  11:17AM

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

NEW YORK LIFE INSURANCE COMPANY, a corporation; NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, a corporation; and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

OLGA ORTMANN, as an individual and on behalf of all others similarly situated

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

MAR 26 2007

L New T

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>ALAMEDA COUNTY SUPERIOR COURT<br>1225 Fallon Street<br>1225 Fallon Street<br>Oakland, CA  94612<br>RENE C. DAVIDSON COURTHOUSE | CASE NUMBER:<br>*(Número del Caso):*<br>RG 07317476 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

MARLIN & SALTZMAN
Stanely D. Saltzman, Esq. (SBN 090058)          (818) 991-8080  (818) 991-8081
29229 Canwood Street, Suite 208
Agoura Hills, CA  91301

DATE:                                          , Clerk, by        L New T        , Deputy
*(Fecha)* MAR 26 2007  PAT S. SWEETEN  *(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* NEW YORK LIFE INSURANCE COMPANY

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☒ by personal delivery on (date): 4-10-07

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465 |

Legal Solutions Plus

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| MARLIN & SALTZMAN<br>Stanely D. Saltzman, Esq. (SBN 090058)<br>Louis M. Marlin, Esq. (SBN 054053)<br>29229 Canwood Street, Suite 208<br>Agoura Hills, CA  91301 | ENDORSED<br>FILED<br>ALAMEDA COUNTY<br>MAR 2 8 2007<br>RECEIVED<br>APR 1 2 2007<br>OFFICE OF THE GENERAL<br>LITIGATION SECTION<br>BY LNewT |

TELEPHONE NO.: (818) 991-8080     FAX NO.: (818) 991-80

ATTORNEY FOR *(Name)*:  Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA  94612
BRANCH NAME: RENE C. DAVIDSON COURTHOUSE

**CASE NAME:** ORTMANN v. NEW YORK LIFE

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RG07317476 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply)*:
   a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive

4. Number of causes of action *(specify)*: twelve (12)

5. This case [X] is [ ] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 26, 2007

MARLIN & SALTZMAN
*(TYPE OR PRINT NAME)*       *(SIGNATURE OR PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 3.220, 3.400–3.403,
Standards of Judicial Administration, § 19

1  **MARLIN & SALTZMAN**
   STANLEY D. SALTZMAN, ESQ. [SBN: 90058]
2  LOUIS M. MARLIN, ESQ. [SBN: 54053]
   CHRISTINA A. HUMPHREY, ESQ. [SBN: 226326]
3  29229 Canwood Street, Suite 208
   Agoura Hills, California 91301-1555
4  (818) 991-8080 Fax: (818) 991-8081

5  **SCHWARTZ, DANIELS & BRADLEY**
   MARCUS BRADLEY, ESQ. [SBN: 174156]
6  29229 Canwood Street, Suite 208
   Agoura Hills, California 91301-1555
7  (310) 478-5838 Fax: (310) 478-1232

8  **LAW OFFICES OF PETER M. HART**
   PETER M. HART, ESQ. [SBN: 198691]
9  13952 Bora Bora Way, F-320
   Marina Del Rey, California 90292
10 (310) 478-5789 Fax: (509) 561-6441

11 Attorneys for Plaintiff, OLGA ORTMANN, and the Proposed Class

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                       **FOR THE COUNTY OF ALAMEDA**

14 OLGA ORTMANN, as an individual and on          )   CASE NO.: RG07317476
   behalf of all others similarly situated,        )
15                                                  )   **COMPLAINT FOR DAMAGES AND**
                                                    )   **EQUITABLE RELIEF:**
16                        Plaintiff,                )
                                                    )
   v.                                               )
17                                                  )   1.   Declaratory Relief;
   NEW YORK LIFE INSURANCE COMPANY,                 )   2.   **Failure to Pay Minimum Wages**
   a corporation; NEW YORK LIFE INSURANCE           )        **in Violation of Cal.** *Labor Code*
18 AND ANNUITY CORPORATION, a                       )        **§1194;**
   corporation; and DOES 1 through 20, inclusive,   )   3.   **Failure to Pay Overtime Wages**
19                                                  )        **in Violation of** *Labor Code* **§**
                                                    )        **·1194;**
                        Defendants.                 )   4.   **Failure to Indemnify and Illegal**
20 _____          )        **Wage Deductions in Violation of**
                                                         **Cal.** *Labor Code* **§§ 226 and**
21                                                       **2802;**

22                                                  5.   **Failure to Allow and Pay for**
                                                        **Meal and Rest Breaks under**
23                                                      **Cal.** *Labor Code* **§§ 200, 226.7,**
                                                        **and 512;**
24                                                  6.   **Failure to Pay Compensation**
                                                        **Upon Discharge in Violation of**
25                                                      **Cal.** *Labor Code* **§§ 201-203;**

26                                                  7.   **Failure to Furnish an Accurate**
                                                        **Itemized Wage Statement upon**
27                                                      **Payment of Wages in Violation**
                                                        **of Cal.** *Labor Code* **§226;**
                                                   8.   **Accounting;**
28                                                  9.   **Unjust Enrichment;**

                                    1

10.    Conversion;
11.    Injunctive Relief;
12.    Violation of Cal. *Business and Prof. Code* §§ 17200 et. seq.

COMES NOW, Plaintiff, OLGA ORTMANN, on her own behalf and on behalf of all similarly situated persons, and for causes of action against Defendants, and each of them, alleges as follows:

## INTRODUCTION

Plaintiff alleges:

1.     This lawsuit is a class action brought on behalf of the Plaintiff and Plaintiff Class which is made up of all persons who are or have been employed by New York Life Insurance Company, New York Life Insurance and Annuity Corporation and Does 1-20 (hereinafter collectively referred to as "Defendants") as insurance agents, in any of the Defendants' offices in the State of California during the Class Period, as the same is defined hereafter.

2.     In this case, Plaintiff seeks relief for herself and the Plaintiff Class under California's Wage and Hour Laws to remedy Defendants': failure to pay minimum wages in violation of *Labor Code* §1194 and the order and standards promulgated by the California Industrial Welfare Commission and California Division of Labor Standards Enforcement; failure to pay overtime compensation in violation of *Labor Code* §1194 and the order and standards promulgated by the California Industrial Welfare Commission and California Division of Labor Standards Enforcement; failure to allow and pay for meal and rest breaks pursuant to *Labor Code* §§200, 226.7, 512; failure to pay compensation at time of termination in violation of *Labor Code* §§201-203; failure to indemnify Plaintiffs for illegal wage deductions and/or monies paid for expenses and losses incurred in the discharge of job duties in violation of *Labor Code* §§226 and 2802; failure to furnish Plaintiff and the Plaintiff Class members with accurate itemized statements required by *Labor Code* §226 upon payment of wages; and failure to comply with fair and lawful business practices as mandated by *Business and Professions Code* §§ 17200 et. seq.. Plaintiff and the Plaintiff

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    Class also seek equitable remedies in the form of declaratory relief, injunctive relief, an

2    accounting, and restitution.

3        3.    The "Class Period" is designated as the time from March 26, 2003, through the

4    date judgment is entered, based upon information and belief that the violations of the *Labor*

5    *Code*, as described more fully hereinafter, began long before March 26, 2003, and are

6    continuing.  Plaintiff herein reserves the right to amend this Complaint for Damages and

7    Equitable Relief to reflect a different "Class Period" as discovery in this matter proceeds.

8        4.    During the "Class Period," Defendants, and each of them, acting in concert,

9    agreed to and did institute a plan pursuant to which Defendants (1) unlawfully and willfully

10   failed to pay minimum wages to the Plaintiff and members of the Plaintiff Class; (2)

11   unlawfully and willfully failed to pay overtime compensation to the Plaintiff and members

12   of the Plaintiff Class; (3) unlawfully and willfully failed to allow and pay for meal and rest

13   breaks to the Plaintiff and the Plaintiff class; (4) unlawfully and willfully failed to pay

14   compensation owing (including unpaid overtime) in a prompt and timely manner to the

15   Plaintiff and members of the Plaintiff Class whose employment with Defendants terminated;

16   (4) unlawfully and willfully failed to indemnify the Plaintiff and Plaintiff Class for illegal

17   wage deductions and/or monies paid for expenses and losses incurred in the discharge of job

18   duties; and (5) unlawfully and willfully failed to furnish Plaintiff and Plaintiff Class accurate

19   itemized statements required by the *Labor Code* upon payment of wages.

20       5.    Specifically, Defendants have applied and enforced a policy of requiring the

21   Plaintiff and members of the Plaintiff Class of insurance agents, whom they contractually

22   required to be "employees" of the Defendants (*See*, exhibit "A" attached hereto, being an

23   exemplar of the relevant page of the subject Training Allowance Subsidy Plan Agreement)

24   to work without compensation for minimum wages or overtime compensation for numerous

25   days/months/years in violation of California Law, including *Labor Code* §1194 and

26   Regulations promulgated under the *Labor Code*.  Defendants' policy is and at all relevant

27   times has been, to fail and refuse to pay minimum wages and overtime compensation due and

28   owing to the Plaintiff and members of the Plaintiff Class in violation of California Law.

3

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

6.    Defendants have willfully failed and refused, and continue to fail and refuse, to allow and pay Plaintiff and members of the Plaintiff Class for meal and rest breaks, in violation of *Labor Code* §§200, 226.7, and 512.

7.    Defendants have willfully failed and refused, and continue to fail and refuse, to pay Plaintiff and members of the Plaintiff Class, wages (including overtime pay), due and owing at the time Plaintiff's and members of the Plaintiff Class' employment with Defendants terminated in a timely and prompt manner as required by *Labor Code* §§201-203.

8.    Defendants have willfully failed and refused, and continue to fail and refuse, to indemnify Plaintiff and members of the Plaintiff Class for illegal wage deductions and/or monies expended for expenses and losses incurred in discharge of their employment duties. Plaintiff and members of the Plaintiff Class were and are still required to purchase certain items including office supplies, insurance, sales scripts, call leads, faxes, and other items to be determined through discovery, and were required to pay rent for a desk, use of software, as well as other items, and paid for their own gas and mileage without reimbursement. Plaintiff and members of the Plaintiff Class were also required to purchase some of the above-described items exclusively from Defendants, in violation of *Labor Code* §450, which prohibits employers from compelling or coercing their employees to patronize his or her employer, or any other person in the purchase of any thing of value. Defendants routinely failed, and continue to fail, to indemnify Plaintiff and members of the Plaintiff Class for said expenses and losses in violation of *Labor Code* §§226 and 2802.

9.    Defendants have willfully failed and refused and continue to fail and refuse, to furnish Plaintiff and members of the Plaintiff Class with accurate itemized wage statements upon payment of wages in violation of *Labor Code* §226.

10.    Plaintiff and members of the Plaintiff Class previously were, or presently are, "insurance agents" employed as "employees" by Defendants in California who were not, and are not, exempt from the payment of minimum wages and overtime under California Law.

///

///

1

## THE PARTIES

2        11.    Plaintiff, OLGA ORTMANN, resides in Alameda County, State of California.

3    Said Plaintiff was employed by Defendants as an employee "insurance agent" in Defendants'

4    office located in East Bay, California, during the class period.  Ms. Ortmann is a member of

5    the Plaintiff Class and a member of the sub-class.

6        12.    Defendants are corporations engaged in the insurance business in the State of

7    California.  Said Defendants were at all times doing business throughout the State of

8    California and have various offices located in the County of Alameda, and throughout the

9    State of California.  Many of the members of the Plaintiff Class, including the representative

10   Plaintiff named herein, have been employed during the class period in Alameda County.  The

11   practices and policies which are complained of by way of this complaint are enforced

12   throughout the State of California, including Alameda County.

13       13.    The true names and capacities, whether individual, corporate, associate,

14   representative, or otherwise, of Defendants named herein as DOES 1 through 20 are currently

15   unknown to Plaintiff and they are therefore sued by such fictitious names pursuant to

16   California Code of Civil Procedure §474.

17       14.    Plaintiff is informed and believes and on that basis alleges, that each of the

18   fictitiously named Defendants were in some manner legally responsible for the unlawful

19   actions, unlawful policies, and unlawful practices.  Plaintiff will amend the Complaint to set

20   forth the true names and capacities of said Defendants, along with the appropriate charging

21   allegations when the same have been asserted.  On the basis of information and belief, it is

22   alleged that each of the Defendants herein was the agent of the other and the agent of all

23   Defendants.  Each such Defendant was acting in the scope of his or her agency at all relevant

24   times.  Each Defendant's act complained of herein was authorized or ratified by the other

25   Defendants in the course and scope of the agency for the benefit of themselves, each other,

26   and the benefit of Defendants.

27   ///

28   ///

## CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a Class Action on behalf of the following defined class and sub-class:

Plaintiff Class

> The Class is comprised of all persons who, since March 26, 2003, have been or currently are employed in California by Defendants as "insurance agent" employees or common law employees.    As used in this Class Definition, the term "insurance agent" refers to any individual whose primary assigned duties include or included, but but neither were nor are limited to, insurance sales carried out pursuant to the "Training Allowance Subsidy Plan Agreement" and/or the "Agent's Contract", respectively attached as Exhibits A and B hereto.

Terminated Sub-Class:

> This sub-class is comprised of all persons whose employment with Defendants has terminated and who did not receive all of the wages owed to them at the time of termination, and/or who did not receive their final wages in a timely manner as mandated by California law.  The named Plaintiff herein is a member of this sub-class.

16.    Plaintiff is informed and believes, and on that basis, alleges that during the class period, thousands of class members have been employed by Defendants as insurance agents in the State of California.  Because so many persons have been employed by Defendants as insurance agents, the members of the Plaintiff Class are so numerous that joinder of all members is impossible and/or impracticable.

17.    Plaintiff's claims are typical of the members of the Plaintiff Class.  Plaintiff, like other members of the class of insurance agents working for Defendants in California, was subjected to Defendants' policy and practice of refusing to pay minimum wages and

1  overtime in violation of California Wage and Hour laws. Plaintiff's job duties were and are

2  typical of those of other class members who worked for Defendants as insurance agents in

3  California. These job duties include inside sales, wherein an insurance agent would spend

4  less than half of his or her day away from the employer's place of business selling insurance

5  and/or related items.

6       18.    A class action is superior to other available methods for the fair and efficient

7  adjudication of this controversy. Plaintiff will fairly and adequately protect the interests of

8  the members of the Plaintiff Class and has retained counsel competent and experienced in

9  both class action and employment litigation.

10       19.    Common questions of law and fact exist as to all members of the Plaintiff Class

11  and predominate over any questions affecting any individual members of the Plaintiff Class.

12  Among the questions of law and fact that are relevant to the adjudication of class members

13  claims are the following:

14       (a)    Whether Defendants unlawfully failed to pay minimum wages to the

15  Plaintiff and members of the Plaintiff Class in violation of *Labor Code* §1194;

16       (b)    Whether Defendants unlawfully failed to pay overtime compensation

17  to the Plaintiff and members of the Plaintiff Class in violation of *Labor Code* §1194;

18       (c)    Whether the Plaintiff and members of the Plaintiff Class are entitled to

19  minimum wages for hours worked under California Law;

20       (d)    Whether the Plaintiff and members of the Plaintiff Class  are entitled

21  to overtime pay for overtime hours worked under California Law;

22       (e)    Whether Defendants unlawfully and/or willfully failed to allow and pay

23  for meal and rest breaks to Plaintiff and members of the Plaintiff Class pursuant to *Labor*

24  *Code* §§200, 226.7,and 512;

25       (f)    Whether Defendants unlawfully and/or willfully failed to promptly pay

26  compensation owing (including unpaid overtime pay) to Plaintiff and members of the Sub-

27  Class upon termination of their employment in violation of *Labor Code* §§201-203;

28       (g)    Whether Defendants unlawfully and/or willfully failed to indemnify

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

1    Plaintiff and members of the Class for illegal wage deductions and/or expenses and losses

2    incurred in the discharge of employment duties in violation of *Labor Code* §§226 and 2802;

3        (h)    Whether Defendants unlawfully and/or willfully failed to furnish

4    Plaintiff and members of the Plaintiff Class accurate itemized wage statements upon payment

5    of wages in violation of *Labor Code* §226;

6        (i)    Whether Plaintiff and members of the Plaintiff Class sustained damages,

7    and if so, the proper measure of such damages, as well as interest, penalties, costs, attorney's

8    fees, and equitable relief; and

9        (j)    Whether the Defendants violated the Unfair Business Practices Law of

10    California, §17200, et seq., by violating the above cited statutes, rules and regulations, and

11    treating the Plaintiff and members of the Plaintiff Class and Sub-Class unfairly by: failing

12    to pay minimum wages and overtime; failing to provide and pay for meal and rest breaks;

13    failing to pay wages upon termination;  failing to furnish an accurate itemized wage

14    statement upon payment of wages and; taking illegal wage deductions and/or wage

15    deductions from Plaintiff's and  members of the Plaintiff Class' wages; and failing to

16    indemnify Plaintiff and members of the Plaintiff Class for expenses and losses incurred in

17    the discharge of their employment duties..

18        20.    Plaintiff knows of no difficulty which will be encountered in the management

19    of this litigation which would preclude its maintenance as a class action.

20                    **FIRST CAUSE OF ACTION**

21                    **DECLARATORY RELIEF**

22                    **(Against Defendants and Does 1-20**

23            **on behalf of Plaintiff and Members of the Plaintiff Class)**

24        21.    Plaintiff hereby repeats and repleads paragraphs 1 through 20  inclusive as if

25    the same were set forth at length and verbatim herein.

26        22.    An actual controversy has arisen and now exists between Plaintiff and all

27    persons similarly situated, on the one hand, and Defendants and each of them, on the other

28    hand, relating to the following matters:

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

a)  Whether Defendants have unlawfully failed to pay minimum wages in violation of *Labor Code* §1194 to Plaintiff and members of the Plaintiff Class;

b)  Whether Defendants have unlawfully failed to pay overtime compensation in violation of *Labor Code* §1194 to Plaintiff and members of the Plaintiff Class;

c)  Whether Defendants unlawfully failed to provide and pay for meal and rest breaks to Plaintiff and members of the Plaintiff Class in violation of *Labor Code* §§ 200, 226.7, and 512;

d)  Whether Defendants unlawfully failed to indemnify Plaintiff and members of the Plaintiff Class for illegal wage deductions and/or expenses and losses incurred in violation of *Labor Code* §§ 226 and 2802;

e)  Whether Defendants unlawfully failed to furnish Plaintiff and members of the Plaintiff Class accurate itemized wage statements upon payment of wages, in violation of *Labor Code* §226;

f)  Whether Defendants unlawfully failed to promptly pay compensation owing (including overtime pay) to Plaintiff and members of the Plaintiff Class upon termination of their employment in violation of *Labor Code* §§ 201-203;

g)  What amount the Plaintiff and members of the Plaintiff Class are entitled to receive in minimum wages;

h)  What amount the Plaintiff and members of the Plaintiff Class are entitled to receive in overtime compensation;

i)  What amount the Plaintiff and members of the Plaintiff Class are entitled to receive in interest on unpaid compensation due and owing;

j)  What amount the Plaintiff and members of the Plaintiff Class are entitled to receive from Defendants in waiting time penalties;

9

k)   What amount the Plaintiff and members of the Plaintiff Class are entitled to receive from Defendants in meal and rest break penalties;

l)   What amount Plaintiff and members of the Plaintiff Class are entitled to for reimbursement of Defendants' illegal wage deductions and/or expenses and losses incurred in discharge of their employment duties;

m)   What amount Plaintiff and members of the Plaintiff Class are entitled to in penalties as a result of Defendants' failure to provide accurate itemized wage statements upon payment of wages;

n)   What amount Plaintiff and members of the Plaintiff Class are entitled to in penalties as a result of all of Defendants' above-cited violations of the *Labor Code*;

o)   What amount Plaintiff and members of the Plaintiff Class are entitled to in restitution as a result of Defendants' violations of the *Labor Code* and California Code of Regulations cited above; and

p)   What amount Plaintiff and members of the Plaintiff Class are entitled to in restitution as a result of Defendants' unfair labor practices regarding its California insurance agents.

23.   Plaintiff and members of the Plaintiff Class further seek entry of a declaratory judgment against Defendants herein declaring Defendants' practices as heretofore alleged to be unlawful, and which provides for recovery of all sums determined by this Court to be owed by Defendants, and each of them, to the Plaintiff and members of the Plaintiff Class.

## SECOND CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGES

### UNDER CALIFORNIA INDUSTRIAL WELFARE COMMISSION ORDERS

### AND *LABOR CODE* §1194

### (Against Defendants and Does 1-20

### On behalf of Plaintiff and Members of the Plaintiff Class)

24.   Plaintiff hereby realleges, and incorporates by reference as though set fully

1   forth herein, the allegations contained in paragraphs 1 through 23.

2        25.    Pursuant to Industrial Welfare Commission Order 4, *California Code of*

3   *Regulations*, Title 8, Chapter 5, §11090, §12, and *Labor Code* §§200, 226, 500, 510, 512,

4   1194, and 1198, Defendants were required to compensate Plaintiff and members of the

5   Plaintiff Class for all hours worked.

6        26.    Plaintiff and members of the Plaintiff Class were, and are, employees entitled

7   to the protections of Industrial Welfare Commission Order 4, California Code of Regulations,

8   Title 8, §11090, §12, and *Labor Code* §§200, 226, 500, 510, 512, 1194, and 1198. During

9   the course of Plaintiff's employment, and during the course of the employment of the

10  members of the Plaintiff Class, Defendants failed to compensate Plaintiff and members of

11  the Plaintiff Class for hours worked as required under the California *Labor Code* and *Code*

12  *of Regulations.*

13       27.    Under the aforementioned wage orders, statutes, and regulations, Plaintiff and

14  members of the Plaintiff Class are entitled to minimum wages for hours worked during the

15  four (4) years preceding the filing of this Complaint.

16       28.    In violation of state law, Defendants have knowingly and willfully refused to

17  perform their obligations to compensate Plaintiff and members of the Plaintiff Class for all

18  wages earned and all hours worked. As a direct result, Plaintiff and members of the Plaintiff

19  Class have suffered, and continue to suffer, substantial losses related to the use and

20  enjoyment of such wages, lost interest on such wages, and expenses and attorney's fees in

21  seeking to compel Defendants to fully perform their obligations under state law, all to their

22  respective damage in amounts according to proof at time of trial, but in amounts in excess

23  of the minimum jurisdiction of this Court.

24       29.    Defendants committed the acts alleged herein knowingly and willfully, with

25  the wrongful and deliberate intention of injuring Plaintiff and members of the Plaintiff Class,

26  from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights

27  and the rights of the Plaintiff Class. Plaintiff and members of the Plaintiff Class are thus

28  entitled to recover nominal, actual, compensatory, punitive, and exemplary damages in

1 amounts according to proof a time of trial, but in amounts in excess of the minimum

2 jurisdiction of this Court.

3    30.    Defendants' conduct described herein violates Industrial Welfare Commission

4 Order 4, California *Code of Regulations*, Title 8, §11090, §12, and *Labor Code* §§200, 226,

5 500, 510, 512 and 1198.  Therefore, pursuant to *Labor Code* §§200, 203, 226, 226.7, 512,

6 558 and 1194, Plaintiff and members of the Plaintiff Class are entitled to recover the unpaid

7 balance of minimum wages Defendants owe Plaintiff and members of the Plaintiff Class,

8 plus interest, penalties, attorney's fees, expenses, and costs of suit.

9                    <u>**THIRD CAUSE OF ACTION**</u>

10                **FAILURE TO PAY OVERTIME COMPENSATION**

11    **UNDER CALIFORNIA INDUSTRIAL WELFARE COMMISSION ORDERS**

12                        **AND *LABOR CODE* §1194**

13                    **(Against Defendants and Does 1-20**

14            **On behalf of Plaintiff and Members of the Plaintiff Class)**

15    31.    Plaintiff hereby realleges, and incorporates by reference as though set fully

16 forth herein, the allegations contained in paragraphs 1 through 30.

17    32.    Pursuant to Industrial Welfare Commission Order 4, *California Code of*

18 *Regulations*, Title 8, Chapter 5, §11090, §12, and *Labor Code* §§200, 226, 500, 510, 512,

19 1194, and 1198, Defendants were required to compensate Plaintiff and members of the

20 Plaintiff Class for all overtime, which is calculated at one and one-half (1½ ) times the

21 regular rate of pay for hours worked in excess of eight (8) hours per day and/or forty (40)

22 hours per week, and for the first eight (8) hours on the seventh consecutive work day; with

23 double time after eight (8) hours on the seventh day of any work week, or after 12 hours in

24 any work day.

25    33.    Plaintiff and members of the Plaintiff Class were, and are, non-exempt

26 employees entitled to the protections of Industrial Welfare Commission Order 4, California

27 Code of Regulations, Title 8, §11090, §12, and *Labor Code* §§200, 226, 500, 510, 512, 1194,

28 and 1198.  During the course of Plaintiff's employment, and during the course of the

1   employment of the members of the Plaintiff Class, Defendants failed to compensate Plaintiff

2   and members of the Plaintiff Class for overtime hours worked as required under the

3   California *Labor Code* and *Code of Regulations*.

4        34.    Under the aforementioned wage orders, statutes, and regulations, Plaintiff and

5   members of the Class are entitled to one and one-half (1½) times and/or double their regular

6   rate of pay for overtime work performed during the four (4) years preceding the filing of this

7   Complaint, based on appropriate calculations of the "total remuneration" for each workweek.

8        35.    In violation of state law, Defendants have knowingly and willfully refused to

9   perform their obligations to compensate Plaintiff and members of the Plaintiff Class for all

10   wages earned and all hours worked. As a direct result, Plaintiff and members of the Plaintiff

11   Class have suffered, and continue to suffer, substantial losses related to the use and

12   enjoyment of such wages, lost interest on such wages, and expenses and attorney's fees in

13   seeking to compel Defendants to fully perform their obligations under state law, all to their

14   respective damage in amounts according to proof at time of trial, but in amounts in excess

15   of the minimum jurisdiction of this Court.

16        36.    Defendants committed the acts alleged herein knowingly and willfully, with

17   the wrongful and deliberate intention of injuring Plaintiff and members of the Plaintiff Class,

18   from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights

19   and the rights of the Plaintiff Class. Plaintiff and members of the Plaintiff Class are thus

20   entitled to recover nominal, actual, compensatory, punitive, and exemplary damages in

21   amounts according to proof a time of trial, but in amounts in excess of the minimum

22   jurisdiction of this Court.

23        37.    Defendants' conduct described herein violates Industrial Welfare Commission

24   Order 4, California *Code of Regulations*, Title 8, §11090, §12, and *Labor Code* §§200, 226,

25   500, 510, 512 and 1198. Therefore, pursuant to *Labor Code* §§200, 203, 226, 226.7, 512,

26   558 and 1194, Plaintiff and members of the Plaintiff Class are entitled to recover the unpaid

27   balance of overtime compensation Defendants owe Plaintiff and members of the Plaintiff

28   Class, plus interest, penalties, attorney's fees, expenses, and costs of suit.

1

## FOURTH CAUSE OF ACTION

2

**FAILURE TO INDEMNIFY FOR EXPENSES AND LOSSES AND ILLEGAL**

3

**DEDUCTIONS FROM WAGES**

4

**UNDER *CALIFORNIA LABOR CODE* §§226 AND 2802**

5

**(Against Defendants and Does 1-20**

6

**On behalf of Plaintiff and Members of the Plaintiff Class)**

7     38.     Plaintiff hereby realleges, and incorporates by reference as though set fully

8     forth herein, the allegations contained in paragraphs 1 through 37.

9     39.     Pursuant to *Labor Code* §2802, the act of requiring employees to expend

10    monies or to indemnify their employer for losses or expenses in direct consequence of the

11    discharge of their duties, is unlawful. Pursuant to Industrial Welfare Commission Orders 4,

12    California Code of Regulations, Title 8, Chapter 5, §11090, *Labor Code* §226, and other

13    laws of the State of California, it is also unlawful for employers to make set-offs and/or

14    deductions from employees' wages, and to fail to properly itemize all deductions from wages.

15    40.     Defendants were required to indemnify and reimburse Plaintiff and members

16    of the Plaintiff Class for all expenditures or losses incurred in direct consequence of the

17    discharge of their duties under the laws and regulations of the State of California. Further,

18    Defendants made unlawful deductions and/or set-offs from the wages of the Plaintiff and

19    members of the Plaintiff Class, and failed to properly itemize all deductions from wages in

20    violation of *Labor Code* §§226 and 2802, and Industrial Welfare Commission Orders 4,

21    California Code of Regulations, Title 8, Chapter 5, §11090. Specifically, and without

22    limitation of the foregoing, Defendants' acted wrongfully by:

23          a.     Failing to indemnify Plaintiff and members of the Plaintiff Class for

24                 office supplies, faxes, rent, software, sales scripts, call leads, insurance,

25                 mileage, and other expenses to determined in discovery of this case.

26          b.     Making unlawful deductions and/or set-offs from the wages of the

27                 Plaintiff and members of the Plaintiff Class, and failing to properly

28                 itemize all deductions from wages

41.    During the four (4) years preceding the filing of this Complaint, Defendants have failed to indemnify and/or charged, deducted, and/or set-off the wages of Plaintiff and members of the Plaintiff Class for illegal purposes.

42.    In violation of state law, Defendants have knowingly and willfully refused to perform their obligations to compensate Plaintiff and members of the Plaintiff Class for expenses and losses incurred and/or illegal wage deductions. As a direct result, Plaintiff and members of the Plaintiff Class have suffered, and continue to suffer, substantial losses related to the use and enjoyment of such monies, lost interest on such monies, and have incurred expenses and attorney's fees in seeking to compel defendants to fully perform their obligation under state law, all to their respective damage in amounts according to proof at time of trial, but in amounts in excess of the minimum jurisdiction of this Court.

43.    Defendants committed the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiff and members of the Plaintiff Class, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights and the rights of the members of the Plaintiff Class. Plaintiff and members of the Plaintiff Class are thus entitled to recover nominal, actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial, but in amounts in excess of the minimum jurisdiction of this Court.

44.    Defendants' conduct described herein violates *Labor Code* §§ 226 and 2802. As a proximate result of the aforementioned violations, Plaintiff and members of the Plaintiff Class have been damaged in an amount according to proof at time of trial, but in an amount in excess of the jurisdiction of this Court. Therefore, pursuant to *Labor Code* §§§§200, 203, 218.5, 226, 226.7, 512, 558, 1194 and 2802, Plaintiff and members of the Plaintiff Class are entitled to recover the unpaid balance of monies Defendants owe, plus interest, penalties, attorney's fees, expenses, and costs of suit.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## FIFTH CAUSE OF ACTION

### FAILURE TO ALLOW AND PAY FOR MEAL AND REST BREAKS UNDER

*CALIFORNIA LABOR CODE* §§ 226.7, 512 and 558

**(Against Defendants and Does 1-20**

**On behalf of Plaintiff and Members of the Plaintiff Class)**

45.    Plaintiff hereby realleges, and incorporates by reference as though set fully forth herein, the allegations contained in paragraphs 1 through 44.

46.    *Labor Code* § 226.7(a) provides, "no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

47.    As alleged herein, Defendants routinely interrupted and/or failed to permit, authorize and/or provide Plaintiff and members of the Plaintiff Class with meal and rest breaks.  By these actions Defendants violated *Labor Code* §226.7(a) as Defendants have failed to provide meal and rest period breaks in the number, length and manner as required. At no time did the Plaintiff and members of the Plaintiff Class expressly or impliedly waived their right to their meal or rest breaks.

48.    As a result of the unlawful acts of the Defendants, Plaintiff and members of the Plaintiff Class have been deprived of meal and rest breaks, and are entitled to recovery under *Labor Code* §226.7(a) in an amount of one additional hour of pay at the employees's regular rate of compensation for each work day that a meal and rest period was not provided. Additionally, Plaintiff and members of the Plaintiff Class are entitled to penalties under *Labor Code* §558.

## SIXTH CAUSE OF ACTION

### FAILURE TO PAY COMPENSATION AT THE TIME OF TERMINATION

IN VIOLATION OF CALIFORNIA *LABOR CODE* §§201-203

**(Against Defendants and Does 1-20**

**On Behalf of the Plaintiff and the Terminated Sub-Class)**

49.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 48 above as

16

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  though fully set forth herein.

2      50.    California *Labor Code* §201 requires an employer who discharges an employee

3  to pay compensation due and owing to said employee immediately upon discharge.

4  California *Labor Code* §202 requires an employer to promptly pay compensation due and

5  owing to an employee within 72 hours of that employee's termination of employment by

6  resignation.  California *Labor Code* §203 provides that if an employer willfully fails to pay

7  compensation promptly upon discharge or resignation in a prompt and timely manner as

8  required pursuant to California *Labor Code* §201 and §202 respectively, said employer is

9  liable to said employee for a waiting time wage continuation as described herein.

10  Defendants' willful failure to pay former employee Plaintiff and members of the Terminated

11  Sub-Class all of the wages due and owing them constitutes violations of *Labor Code* §§201

12  and 203, which provides that an employee's wages will continue as a waiting time wage

13  continuation up to thirty (30) days from the time the wages were due.  Therefore, Plaintiff

14  and members of the Terminated Sub-Class are entitled to a waiting time wage continuation

15  pursuant to *Labor Code* §203.

16      51.    Plaintiffs and members of the Terminated Sub-Class were previously employed

17  by Defendants and were terminated within the class period as set forth above.  Defendants

18  failed to pay all wages due to this sub-class at the time of termination, and, in addition, failed

19  to pay all wages due in a timely manner as mandated by California *Labor Code* §§ 201 - 203.

20      52.    Plaintiff and members of the Terminated Sub-Class seek waiting time wage

21  continuation for the allocable time period prior to filing this complaint, plus costs, interest,

22  disbursements  and attorneys fees pursuant to California law, including but not limited to

23  *Labor Code* §§218.5 and 218.6.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

## SEVENTH CAUSE OF ACTION

**FAILURE TO PROVIDE AN "ACCURATE" ITEMIZED WAGE STATEMENT**

**UPON PAYMENT OF WAGES IN VIOLATION OF *LABOR CODE § 226***

**(Against Defendants and Does 1-20**

**On behalf of Plaintiff and Members of the Plaintiff Class)**

53.    Plaintiff hereby realleges, and incorporates by reference as though set fully forth herein, the allegations contained in paragraphs 1 through 52.

54.    *Labor Code* §226(a) sets forth reporting requirements for employers when they pay wages, as follows: "Every employer shall ... at the time of each payment of wages, furnish his or her employees ... an itemized statement in writing showing (1) gross wages earned; (2) total hours worked by the employee...(3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis...." Section (e) provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) shall be entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4000), and shall be entitled to an award of costs and reasonable attorney's fees."

55.    Defendants failed to accurately record the hours worked by Plaintiff and members of the Plaintiff Class.

56.    Additionally, Defendants failed to accurately record the overtime hours worked by Plaintiff and members of the Plaintiff Class.

57.    Plaintiff and members of the Plaintiff Class were damaged by these failures because, among other things, the failure to accurately record or maintain any records of the hours worked  hindered Plaintiff and members of the Plaintiff Class from determining the amounts of wages actually owed to them.

58.    Plaintiff and members of the Plaintiff Class request recovery of *Labor Code* §226(e) penalties according to proof, as well as interest, attorney's fees and costs pursuant

1   to *Labor Code* §226(e), in a sum as provided by the *Labor Code* and/or other statutes.

2   ## EIGHTH CAUSE OF ACTION

3   ## ACCOUNTING

4   **(Against Defendants and Does 1-20**

5   **On behalf of Plaintiff and Members of the Plaintiff Class)**

6   59.    Plaintiff hereby realleges, and incorporates by reference as though set fully

7   forth herein, the allegations contained in paragraphs 1 through 58.

8   60.    The Plaintiff and members of the Plaintiff Class are owed wages which equal

9   the sum of minimum wages, overtime compensation, expenses and losses, wage deductions,

10   and wages for meal and rest breaks not paid by Defendants to Plaintiff and members of the

11   Plaintiff Class, statutory interests on such compensation, and each of them, waiting time

12   penalties, penalties pursuant to §§ 226(e), 226.7, 558, and any other penalties alleged in this

13   Complaint.

14   61.    The Plaintiff does not know the precise amount of compensation due to the

15   Plaintiff and members of the Plaintiff Class. Upon information and belief, Plaintiff alleges

16   that Defendants, and each of them, possess records from which the amount of compensation

17   due and owing to each class member herein can be determined.

18   62.    The amount of statutory interest and penalties owed to Plaintiff and members

19   of the Plaintiff Class is based on the amount of compensation owed to Plaintiff and members

20   of the Plaintiff Class by Defendants. This amount can only be determined by an accounting

21   of books and records in possession of Defendants, and each of them.

22   ## NINTH CAUSE OF ACTION

23   ## UNJUST ENRICHMENT

24   **(Against Defendants and Does 1-20**

25   **On behalf of Plaintiff and Members of the Plaintiff Class)**

26   63.    Plaintiff hereby realleges, and incorporates by reference each and every

27   allegation set forth in the preceding paragraphs 1-62.

28   64.    By working for Defendants without appropriate pay, without pay or overtime

1    pay  when it was/is due, without meal and rest breaks, and without reimbursement for

2    expenses and losses, Plaintiff and members of the Plaintiff Class conferred a substantial

3    benefit on Defendants. Plaintiff and members of the Plaintiff Class performed work without

4    receiving the wages and benefits to which Plaintiff and members of the Plaintiff Class were

5    entitled to as a matter of law.  This significant benefit substantially reduced Defendants'

6    expenses, thereby increasing Defendants' profitability.

7         65.    Given that Defendants thrive on increasing profitability and increasing returns

8    to its shareholders, Defendants knew of and/or appreciated the benefits conferred upon them

9    by their retention of Plaintiff and members of the Plaintiff Class' property.  Plaintiff is

10   informed and believes, and thereon alleges, that Defendants' clandestine wage abuses

11   substantially contribute to Defendants profitability.

12        66.    Plaintiff and members of the Plaintiff Class have provided a significant

13   quantity of labor and covered a significant number of expenses for Defendants to their

14   detriment and solely for the benefit of Defendants. Defendants accepted and were enriched

15   by this benefit conferred and have never properly paid Plaintiffs and members of the Plaintiff

16   Class for the labor and monies provided.

17        67.    By failing to pay all earned wages (including overtime pay) when due, failing

18   to pay wages when due, failing to provide meal and rest breaks, failing to reimburse for

19   expenses and losses, and taking illegal wage deductions, Defendants have wrongfully

20   obtained and withheld the wages and monies earned by Plaintiffs and members of the

21   Plaintiff Class.

22        68.    Defendants accepted and retained the wages and monies for expenses and

23   losses of Plaintiff and members of the Plaintiff Class. Under these circumstances, it would

24   be inequitable for Defendants to keep the wages earned by Plaintiff and members of the

25   Class.

26   / / /

27   / / /

28   / / /

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

### TENTH CAUSE OF ACTION

### CONVERSION

#### (Against Defendants and Does 1-20

#### On behalf of Plaintiff and Members of the Plaintiff Class)

69.     Plaintiff hereby realleges, and incorporates by reference as though set fully forth herein, the allegations contained in paragraphs 1 through 68.

70.     Defendants knowingly and intentionally required Plaintiff and members of the Plaintiff Class to work without pay and overtime pay and failed to pay them minimum wages and over time.

71.     Defendants knowingly and intentionally failed to allow and pay for meal and rest breaks.

72.     Defendants knowingly and intentionally forced Plaintiff and members of the Plaintiff Class to pay for expenses and losses incurred in the discharge of their employment and/or made illegal wage deductions and/or wage deductions from the pay of Plaintiff and members of the Plaintiff Class.

73.     Defendants withheld the earned minimum wages, overtime wages, pay for meal and rest breaks, expenses and losses, and illegal deductions, and exercised dominion and control over them such as to convert these withheld wages and/or monies which Plaintiff and members of the Plaintiff Class owned or had the right to own, and had the legal right to hold, possess, and dispose.

74.     Defendants knowingly, willfully, and unlawfully interfered with the Plaintiff and the rights of all of the members of the Plaintiff Class to own, possess, and/or control the disposition of said monies, wages, and overtime wages.

75.     The exact amount of monies, wages, and overtime wages earned by Plaintiff and each of the members of the Plaintiff Class here alleged, is identifiable even though the specific sum of money each Plaintiff and each member of the Plaintiff Class may vary by individual.

76.     In refusing to pay wages and overtime owed to Plaintiff and members of the

21

1  Plaintiff Class, Defendants knowingly, unlawfully, and intentionally took, appropriated, and

2  converted the property of Plaintiff and members of the Plaintiff Class here alleged for

3  Defendants' own use, purpose, and benefits.

4      77.    Plaintiff and members of the Plaintiff Class have been injured by said

5  conversion in the amount of the monies converted by the Defendants, with interest thereon

6  from that time.

7      78.    Defendants' actions constituting conversion were oppressive, malicious and

8  fraudulent. As such, Plaintiff and members of the Plaintiff Class are entitled to punitive and

9  exemplary damages. Plaintiffs further seek on behalf of the general public, the appointment

10  of a receiver, as necessary to establish the total monetary relief sought from Defendants.

11  <u>**ELEVENTH CAUSE OF ACTION**</u>

12  **REQUEST FOR INJUNCTIVE RELIEF**

13  **PURSUANT TO *LABOR CODE § 1194.5***

14  **(Against Defendants and Does 1-20**

15  **On behalf of Plaintiff and Members of the Plaintiff Class)**

16      79.    Plaintiff hereby realleges, and incorporates by reference as though set fully

17  forth herein, the allegations contained in paragraphs 1 through 78.

18      80.    Defendants have applied their policies of failing to pay wages and overtime in

19  violation of California law, and failing to indemnify plaintiff and members of the plaintiff

20  class under *Labor Code* Section 2802, and failing to furnish Plaintiff and members of the

21  Plaintiff Class an accurate wage statement under *Labor Code* §226, to those members of the

22  Plaintiff Class still employed by Defendants.

23      81.    Plaintiff and members of the Plaintiff Class have been, and are suffering injury

24  and damages by Defendants' unlawful actions as heretofore alleged. Plaintiff and members

25  of the Plaintiff Class are threatened with immediate irreparable harm by the continuation of

26  Defendants' unlawful actions as heretofore alleged, and have no adequate remedy at law.

27  As a result thereof, Plaintiff and members of the Plaintiff Class seek that Defendants be

28  enjoined from continuing with the wrongful and ongoing business practices set forth

1  hereinabove, and that the Court issue an appropriate injunction according to proof herein.

2  ### TWELFTH CAUSE OF ACTION

3  ### VIOLATIONS OF CALIFORNIA

4  ### *BUSINESS AND PROFESSIONS CODE* §17200

5  ### (Against Defendants and Does 1-20

6  ### On behalf of Plaintiff and Members of the Plaintiff Class)

7      82.    Plaintiff hereby realleges, and incorporates by reference as though

8  set fully herein, the allegations contained in paragraphs 1 through 81.

9      83.    By violating the statutes and regulations set forth hereinabove, and

10  incorporated by reference hereto, failing to pay either minimum wages and/or overtime

11  wages, unfairly deducting wages and charging for expenses and losses incurred by Plaintiff

12  and members of the Plaintiff Class in discharge of their employment duties, and forcing

13  Plaintiffs to purchase supplies and other items from Defendants in violation of *Labor Code*

14  §450, Defendants acts constitute unfair and unlawful business practices under *Business and*

15  *Professions Code* §17200, *et. seq.*

16      84.    Defendants' violations of California wage and hour laws and illegal payroll

17  practices or payment policies constitute a business practice because it was done repeatedly

18  over a significant period of time, and in a systematic manner to the detriment of Plaintiff and

19  members of the Plaintiff Class.

20      85.    For the four (4) years preceding the filing of this action, Plaintiff and members

21  of the Plaintiff Class have suffered these losses and request restitution of all monies and

22  profits to be disgorged from defendants in an amount according to proof at the time of trial.

23  ### PRAYER FOR RELIEF

24      **WHEREFORE**, Representative Plaintiff, on behalf of herself, and on behalf of the

25  members of the Plaintiff Class, pray for judgment against Defendants as follows:

26      1.    For an Order certifying the proposed Class and Sub-Class;

27      2.    For nominal damages;

28      3.    For compensatory damages;

4.    For restitution of all monies due to Plaintiff and members of the Plaintiff Class, and disgorged profits from the unlawful business practice of defendants;

5.    For waiting time penalties pursuant to *Labor Code* §203;

6.    For Penalties pursuant to *Labor Code* §§ 226, 226(e), 226.7, 512, 558, 1194, and 1194.2;

7.    For interest accrued to date;

8.    Injunctive relief enjoining defendants from engaging in the unlawful and unfair business practices complained of herein;

9.    Declaratory relief declaring Defendants practices as unlawful and unfair business practices within the meaning of Business & Professions Code §17200, et seq.; and declaring that Defendants unlawfully failed to compensate Plaintiff and members of the Plaintiff Class for minimum wages and overtime; failed to allow and pay for meal and rest breaks to Plaintiff and Plaintiff class, failed to indemnify Plaintiff and Plaintiff class under *Labor Code* §2802, failed to pay wages to former employee Plaintiff class members  upon termination, failed to provide to Plaintiff and Plaintiff Class members an accurate itemized statement of wages upon payment of wages; and declaring the amounts of damages, penalties, equitable relief, costs, and attorneys' fees Plaintiff and members of the Plaintiff Class are entitled to thereunder.

10.    An accounting of Defendants' books and records;

11.    For costs of suit and expenses incurred herein pursuant to *Labor Code* §§218.5, 226 and 1194;

12.    For reasonable attorney's fees pursuant to *Labor Code* §§218.5, 226, and 1194;

13.    For punitive and exemplary damages; and

/ / /

/ / /

/ / /

14.    For all such other and further relief that the Court may deem just and proper.

Dated:  March26, 2007
                                **MARLIN & SALTZMAN**
                                **SCHWARTZ, DANIELS & BRADLEY**
                                **LAW OFFICES OF PETER M. HART**


                        By _____
                                Stanley D. Saltzman of Marlin & Saltzman
                                Attorneys for Plaintiffs


## DEMAND FOR JURY TRIAL

NAMED PLAINTIFF hereby demands a jury trial.

Dated: March 26, 2007
                                **MARLIN & SALTZMAN**
                                **SCHWARTZ, DANIELS & BRADLEY**
                                **LAW OFFICES OF PETER M. HART**


                        By _____
                                Stanley D. Saltzman of Marlin & Saltzman
                                Attorneys for Plaintiffs

25

**EXHIBIT A**



**NEW YORK LIFE INSURANCE COMPANY**
51 Madison Avenue, New York, NY 10010

**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION**
(A Delaware Corporation)
51 Madison Avenue, New York, NY 10010

**NYLIFE INSURANCE COMPANY OF ARIZONA**
(An Arizona Corporation)
4343 N. Scottsdale Road, Suite 220, Scottsdale, AZ 85251

**TRAINING ALLOWANCE SUBSIDY PLAN AGREEMENT**
(Form TAS-04/04)

Agent: _____

Address: _____
        (Street)        (City)      (State)  (Zip)

General Office: _____

Effective Date: _____

New York Life Insurance Company, New York Life Insurance and Annuity Corporation, NYLIFE Insurance Company of Arizona (hereinafter collectively "the Company") and the Agent named above (the Agent) hereby agree as follows:

1.    This Agreement is a supplement to and modifies the Agent's Contract executed simultaneously by the parties to this Agreement and bearing the same effective date as this Agreement, and any provisions contained in the Agent's Contract that are contrary to the provisions of this Agreement will be ineffective and inapplicable, and the provisions of this Agreement will be controlling.

2.    This Agreement will commence on the effective date stated above and will terminate at the end of the Third Contract Year, as defined in this Agreement, or earlier in accordance with its provisions. While this Agreement is in effect, the Agent will be an employee of the Company, subject to its direction and control, and will devote the Agent's entire time to the business of this employment. The Agent will diligently study the Company's training courses, fulfill the Company's requirements in connection therewith, comply with any other educational and training requirements of the Company, and keep such records and make such reports as may be required. The Agent will endeavor to become and be a successful Agent capable of directing and controlling the Agent's own time and efforts.

3.    The First Contract Year under this Agreement will commence on the effective date in the calendar month stated above and will end in the next succeeding year on the last day of the calendar month specified in said effective date. The Second Contract Year will be a period of 12 consecutive months ending in the next succeeding year on the last day of the calendar month so specified. The Third Contract Year will be a period of 12 consecutive months ending in the next succeeding year on the last day of the calendar month so specified.

#88118 v1 (04/04)

4.  In the First Contract Year, that period of time from the effective date of this Agreement until the end of the first calendar month under this Agreement stated above will be the "Starting Contract Month" for all purposes of this Agreement.

The next twelve consecutive calendar months, which occur in the First Contract Year, will be contract months number one through and including number twelve, respectively, for all purposes of this Agreement. The next twelve consecutive calendar months, which occur in the Second Contract Year, will be contract months number thirteen through and including number twenty-four, respectively, for all purposes of this Agreement. The next twelve consecutive calendar months, which occur in the Third Contract Year, will be contract months number twenty-five through and including number thirty-six, respectively, for all purposes of this Agreement.

5.  This Agreement may be terminated by either the Agent or the Company, with or without cause, upon written notice to the other, said termination to be effective immediately.

6.  In addition to the commissions payable under the compensation provisions of the Agent's Contract, Training Allowances are payable under the terms of this Agreement as provided in Sections 9 and 10 below, entitled Commission Based Training Allowance Payments and Life Case Rate Training Allowance Bonuses, respectively.

7.  For purposes of crediting commissions to the Agent's ledger, and determining the amount of "Net Eligible First Year Commissions" (as defined in Section 9 below) to be used in calculating the amount of a Commission Based Training Allowance payment, the following annualization of commission rules will apply:

First year commissions will be based on premiums received by the Company for the first policy year of all policies (for the first premium year of periodic premium annuities) effected upon applications obtained by the Agent while this Agreement is in effect. The full annualized amount of such commissions will be equal in amount to the total first year commissions which, except for this Agreement, would have been payable on such premiums under the Agent's Contract. For individual life insurance, individual annuity (including variable annuities sold as Tax Sheltered Annuities but excluding all other variable annuities) and individual long term care policies, commissions will be allowed when the policy is delivered and the premiums indicated in the table below have been received and applied at the Company's Home Office as follows:

| Premium Mode | Percentage of Total First Year Commissions Allowed on Receipt of Indicated Premium or Allotment |
|---|---|
| Annual | 100% on 1st premium |
| Semi-Annual | 100% on 1st premium |
| Quarterly | 50% on 1st premium; 50% on 3rd premium |
| Regular Monthly | 50% on 1st premium; 50% on 7th premium |
| Check-O-Matic | 100% on 1st premium |
| NYL-A-Plan | 100% on 1st premium |
| Government Allotment | 100% on 1st allotment |

When any policy referred to above terminates prior to its first anniversary, the commissions previously allowed with respect to such policy will be debited to the Agent's ledger and the amount of the commissions applicable with respect to the premium actually received by the Company will be credited to the Agent's ledger, except that, upon the termination of a policy having a regular monthly, Check-O-Matic, NYL-A-Plan, or Government Allotment premium mode on which fewer than three premiums have been paid, no commissions will be allowed for the premium or premiums actually received and

- 2 -

#83118 v1 (04/04)

applied by the Company unless termination of the policy is on account of the death of the insured or unless the total paid premiums amount to at least $300, in either of which case such applicable commissions will be credited. For group insurance and group annuity policies, commissions will be allowed on premiums received by the Company in accordance with the group commission rules.

When the Company, for any reason, rescinds or cancels a policy and refunds or tenders a refund of a premium, in whole or in part, the Company will debit the Agent's ledger by the amount of any commission refund applicable because of the premiums so refunded or tendered for refund.

No commissions, where payable, will be entered on the Agent's ledger with respect to premiums for any policy on the life of the Agent or any other Agent, or on the life of their family members (parent, brother, sister, spouse or child) unless and until the full first year's premium has been paid.

8.  For the purpose of determining the number of "Net Eligible Weighted Life Cases" (as defined in Section 10 below) to be used in calculating the amount of Life Case Rate Training Allowance, the following case rate rules will apply:

A case will be credited to an agent while this Agreement is in effect and when the policy is delivered and the premiums have been received and applied at the Company's Home Office, as described in Section 7, above.

When the Company, for any reason, rescinds or cancels a policy and refunds or tenders a refund of a premium, a negative case credit for that policy, equal to the original positive case credited to the Agent, will be applied to the Agent's Net Eligible Weighted Life Cases in the month of the refund.

9.  **Commission Based Training Allowance Payments**

(a)  *Period of Commission Based Training Allowance Payments* – During the first Three Contract Years as defined in Section 3 above, the Agent may qualify for Commission Based Training Allowance payments.

(b)  *Commission Based Training Allowance* – Subject to the terms of this Agreement, the Agent may be eligible to receive one Commission Based Training Allowance payment as of the last day of each contract month. Any Commission Based Training Allowance payment with respect to a contract month will be determined in accordance with the terms of this Agreement. The amount of any Commission Based Training Allowance payment for which the Agent qualifies is determined in accordance with the Commission Based Training Allowance Tables 1 and 2 below, on the basis of:

(i)  the Net Eligible First Year Commissions (as defined below) credited to the Agent's ledger with respect to both the current contract month and prior contract months, on applicable policies effected upon applications obtained by the Agent, and

(ii)  the number of contract months following the month of the effective date of this Agreement, and

(iii)  the Commission Based Training Allowance Factor applicable to the Net Eligible First Year Commissions with respect to such contract month.

"Net Eligible First Year Commissions", for purposes of this Agreement, are solely net first year life, annuity, and individual Long Term Care commissions on eligible products and riders. A list of such eligible products and riders will be available in the General Office and are periodically published in Field News and on the Agency

- 3 -

#88118 v1 (04/04)

Department FieldNet.  Compensation may be limited under certain qualifying compensation options as indicated in the Company's commission schedules.  In addition, Net Eligible First Year Commissions shall not include any commissions on policies on the life of the Agent or any other Agent, or on the life of any of their family members (i.e., parent, brother, sister, spouse, or child).  First year commissions other than those included as "Net Eligible First Year Commission" will not count for the purpose of qualifying for Commission Based Training Allowance and will produce no Commission Based Training Allowance.

A ledger account, herein referred to as the Agent's ledger, will be established for the Agent. Appropriate credits and debits will be entered on the Agent's ledger in accordance with this Agreement and with the Company's rules and procedures concerning the administration of an Agent's ledger.  For purposes of this Agreement, commissions are credited to an Agent's ledger only after the required premiums have been received and applied at the Company's Home Office.

(c)    *Payment of Commission Based Training Allowance* – If the Agent qualifies under the terms of this Agreement, a Commission Based Training Allowance will be payable as of the last day of a contract month.  In order to qualify for, and to receive a Commission Based Training Allowance payment as of the last day of a contract month:

   (i)    the Agent's Contract and this Agreement must be in full force and effect on the last day of such contract month, and

   (ii)   the Agent's Net Eligible First Year Commissions, credited to the Agent's ledger with respect to the contract month, must total not less than the minimum qualifying amount specified in Table 1—Minimum Commission Based Training Allowance for such month, and

   (iii)  the Agent's Net Eligible First Year Commissions, credited to the Agent's ledger with respect to the current contract month added to all prior contract months must total not less than the Minimum Net Eligible First Year Commission Cumulative Earnings Requirement specified in Table 1 below.

A Commission Based Training Allowance will be payable as of the last day of a contract month only if the above requirements have been satisfied.  The amount of such Commission Based Training Allowance payment will be credited to the Agent's ledger.  If, as of the last day of a contract month, the Agent fails to meet the requirements set forth above, no Commission Based Training Allowance is payable, or will be paid with respect to that month.

(d)    *Calculation of Commission Based Training Allowance* — The Commission Based Training Allowance which may be payable with respect to a contract month will be equal to:

   (i)    90% of the Net Eligible First Year Commissions, credited to the Agent's ledger with respect to the Starting Contract Month, and/or credited to the Agent's ledger with respect to each of the next twelve contract months, numbered one through and including twelve, respectively, and

   (ii)   45% of the Net Eligible First Year Commissions, credited to the Agent's ledger with respect to each of the next twelve contract months, numbered thirteen through and including twenty-four, respectively, and

- 4 -

#88118 v1 (04/04)

(iii)   27% of the Net Eligible First Year Commissions, credited to the Agent's ledger with respect to each of the next twelve contract months, numbered twenty-five through and including thirty-six, respectively,

all subject to the minimum qualifications specified in the Minimum Commission Based Training Allowance Table (Table 1) below and subject to the Maximum Commission Based Training Allowance, specified in the Maximum Commission Based Training Allowance Table (Table 2) below.

*Exception for Contract Month One*: In determining the Commission Based Training Allowance with respect to contract month one only, the following two adjustments will be made:

(1)   the Net Eligible First Year Commissions credited with respect to the Starting Contract Month will be added to the Net Eligible First Year Commissions credited with respect to contract month one and this total will be reduced by 111.1% of any Commission Based Training Allowance that was payable as of the end of the Starting Contract Month, and

(2)   the maximum Net Eligible First Year Commissions eligible for Commission Based Training Allowance in contract month one will be reduced by 111.1% of any Commission Based Training Allowance that was payable as of the end of the Starting Contract Month.

**Qualification Requirements for Commission Based Training Allowance** - The Minimum Commission Based Training Allowance Table (Table 1) below sets forth the minimum requirements with respect to each contract month in order for the Agent to qualify for a Commission Based Training Allowance Payment with respect to each month. If the Agent's Net Eligible First Year Commissions credited to the ledger with respect to a contract month are less than the Minimum Net Eligible First Year Commissions Requirement or if the Agent's total Net Eligible First Year Commissions for the current contract month plus all prior contract months do not equal at least the Minimum Net Eligible First Year Commissions Cumulative Earnings Requirement, the Agent will not receive a Commission Based Training Allowance payment with respect to such contract month.

The Maximum Commission Based Training Allowance Table (Table 2) below sets forth the Maximum Commission Based Training Allowance which may be payable with respect to each contract month and the Net Eligible First Year Commissions required to be credited to the Agent's ledger with respect to each contract month in order for the Agent to qualify for the Maximum Commission Based Training Allowance payment with respect to such contract month. Net Eligible First Year Commissions credited to an Agent's ledger with respect to a contract month which are in excess of those set forth in Table 2 will produce no additional Commission Based Training Allowance, except as provided in the Commission Based Catch-Up or Carryover provisions set forth in Section 9(e) and 9(f) below.

#88118 v1 (04/04)

## TABLE 1 MINIMUM COMMISSION BASED TRAINING ALLOWANCE

| End of Contract Month Starting | Minimum Net Eligible FYC Required in Contract Month to Qualify for Commission Based Training Allowance With Respect to Such Month $500 | Minimum Net Eligible FYC Cumulative Earnings Requirement $ 0 | Commission Based Training Allowance Factor 90% | Commission Based Training Allowance Payment for Contract Month if Required Minimums Are Met With Respect to Such Month $450.00 |
|---|---|---|---|---|
| 1 | 500 | 500 | 90 | 900.00* |
| 2 | 500 | 1,000 | 90 | 450.00 |
| 3 | 500 | 1,500 | 90 | 450.00 |
| 4 | 500 | 2,000 | 90 | 450.00 |
| 5 | 500 | 2,500 | 90 | 450.00 |
| 6 | 500 | 3,000 | 90 | 450.00 |
| 7 | 500 | 3,500 | 90 | 450.00 |
| 8 | 500 | 4,000 | 90 | 450.00 |
| 9 | 500 | 4,500 | 90 | 450.00 |
| 10 | 500 | 5,000 | 90 | 450.00 |
| 11 | 500 | 5,500 | 90 | 450.00 |
| 12 | 500 | 6,000 | 90 | 450.00 |
| **Total First Contract Year**** | | | | **$5,850.00** |
| 13 | $750 | $6,700 | 45% | $337.50 |
| 14 | 750 | 7,400 | 45 | 337.50 |
| 15 | 750 | 8,100 | 45 | 337.50 |
| 16 | 750 | 8,800 | 45 | 337.50 |
| 17 | 750 | 9,500 | 45 | 337.50 |
| 18 | 750 | 10,200 | 45 | 337.50 |
| 19 | 750 | 10,900 | 45 | 337.50 |
| 20 | 750 | 11,600 | 45 | 337.50 |
| 21 | 750 | 12,300 | 45 | 337.50 |
| 22 | 750 | 13,000 | 45 | 337.50 |
| 23 | 750 | 13,700 | 45 | 337.50 |
| 24 | 750 | 14,400 | 45 | 337.50 |
| **Total Second Contract Year**** | | | | **$4,050.00** |
| 25 | $1,000 | $15,300 | 27% | $270.00 |
| 26 | 1,000 | 16,200 | 27 | 270.00 |
| 27 | 1,000 | 17,100 | 27 | 270.00 |
| 28 | 1,000 | 18,000 | 27 | 270.00 |
| 29 | 1,000 | 18,900 | 27 | 270.00 |
| 30 | 1,000 | 19,800 | 27 | 270.00 |
| 31 | 1,000 | 20,700 | 27 | 270.00 |
| 32 | 1,000 | 21,600 | 27 | 270.00 |
| 33 | 1,000 | 22,500 | 27 | 270.00 |
| 34 | 1,000 | 23,400 | 27 | 270.00 |
| 35 | 1,000 | 24,300 | 27 | 270.00 |
| 36 | 1,000 | 25,200 | 27 | 270.00 |
| **Total Third Contract Year**** | | | | **$3,240.00** |
| **Maximum Total For Three Contract Years**** | | | | **$13,140.00** |

\*      The calculation of Commission Based Training Allowance with respect to contract month one is set forth in Section 9(d) above

\*\*Solely if all requirements of this Agreement are complied with in each and every contract month or if the requirements of the Commission Based Catch-Up or Carryover provisions are complied with where applicable.

#88118 v1 (04/04)

## TABLE 2 MAXIMUM COMMISSION BASED TRAINING ALLOWANCE

| End of Contract Month | Net Eligible FYC Required in Contract Month to Produce Maximum Commission Based Training Allowance With Respect to Such Month | Training Allowance Factor | Maximum Commission Based Training Allowance Payment With Respect to Such Contract Month |
|---|---|---|---|
| Starting | $1,700 | 90% | $1,530 |
| 1 | 1,700 | 90 | 3,060* |
| 2 | 1,700 | 90 | 1,530 |
| 3 | 1,700 | 90 | 1,530 |
| 4 | 1,700 | 90 | 1,530 |
| 5 | 1,700 | 90 | 1,530 |
| 6 | 1,700 | 90 | 1,530 |
| 7 | 1,700 | 90 | 1,530 |
| 8 | 1,700 | 90 | 1,530 |
| 9 | 1,700 | 90 | 1,530 |
| 10 | 1,700 | 90 | 1,530 |
| 11 | 1,700 | 90 | 1,530 |
| 12 | 1,700 | 90 | 1,530 |
| | Total First Contract Year** | | $19,890 |
| 13 | $2,200 | 45% | $990 |
| 14 | 2,200 | 45 | 990 |
| 15 | 2,200 | 45 | 990 |
| 16 | 2,200 | 45 | 990 |
| 17 | 2,200 | 45 | 990 |
| 18 | 2,200 | 45 | 990 |
| 19 | 2,200 | 45 | 990 |
| 20 | 2,200 | 45 | 990 |
| 21 | 2,200 | 45 | 990 |
| 22 | 2,200 | 45 | 990 |
| 23 | 2,200 | 45 | 990 |
| 24 | 2,200 | 45 | 990 |
| | Total Second Contract Year** | | $11,880 |
| 25 | $2,500 | 27% | $675 |
| 26 | 2,500 | 27 | 675 |
| 27 | 2,500 | 27 | 675 |
| 28 | 2,500 | 27 | 675 |
| 29 | 2,500 | 27 | 675 |
| 30 | 2,500 | 27 | 675 |
| 31 | 2,500 | 27 | 675 |
| 32 | 2,500 | 27 | 675 |
| 33 | 2,500 | 27 | 675 |
| 34 | 2,500 | 27 | 675 |
| 35 | 2,500 | 27 | 675 |
| 36 | 2,500 | 27 | 675 |
| | Total Third Contract Year** | | $8,100 |
| **Maximum Total For Three Contract Years**** | | | **$39,870** |

\*    The calculation of Commission Based Training Allowance with respect to contract month one is set forth in Section 9(d) above.

\*\*   Solely if all requirements of this Agreement are complied with in each and every contract month or if the requirements of the Commission Based Catch-Up or Carryover provisions are complied with where applicable.

(e)    *Commission Based Catch-Up Provision*

    (i)    If the Agent does not qualify for the Maximum Commission Based Training Allowance payment as of the last day of one or more contract months during a contract quarter, the difference between the maximum cumulative Commission Based Training Allowance which could have been paid through the contract month for that contract quarter and the total Commission Based Training Allowance actually credited to the Agent's ledger up to that contract month during that contract quarter may be payable to the Agent as provided in (e)(ii), below, if (a) the Net Eligible First Year Commissions credited to the Agent's ledger during that contract month equal at least the Minimum Net Eligible First Year Commission Requirement specified in the Minimum Commission Based Training Allowance Table (Table 1) for such month, and (b) the Agent has met at least the Minimum Net Eligible First Year Commission Cumulative Earnings Requirement for that contract month.

    (ii)    If the requirements of (e)(i), above, are met, a Commission Based Catch-Up will be calculated as follows:

        (a)    Determine the sum of the Net Eligible First Year Commissions actually credited to the Agent's ledger as of the last day of the current and each prior contract month in the current contract quarter, and

        (b)    Determine the sum of the Net Eligible First Year Commissions required to produce Maximum Commission Based Training Allowance for the current and each prior contract month in the current contract quarter.

        (c)    Multiply the lesser of (a) or (b) above by the Commission Based Training Allowance Factor applicable to the contract month in the current contract quarter.

The Commission Based Catch-Up is the net, if any of (c) above, over the sum of the Commission Based Training Allowance credited to the Agent's ledger with respect to the current and any prior contract months in the current contract quarter.

(f)    *Carryover Provision*

    (i)    If the Agent does not qualify for the Maximum Commission Based Training Allowance of $19,890 which may be paid with respect to the First Contract Year, the difference between such maximum and the Commission Based Training Allowance actually paid with respect to the First Contract Year will be added to the Maximum Commission Based Training Allowance which may be paid with respect to the Second Contract Year by dividing such difference by 12. The result will then be (a) added to the maximum monthly Commission Based Training Allowance payment specified in the Maximum Commission Based Training Allowance Table (Table 2) for each of contract months 13 through 24, and (b) divided by .45 to determine the amount to add to the Net Eligible First Year Commissions required to qualify for the Maximum Commission Based Training Allowance specified in the Maximum Commission Based Training Allowance Table (Table 2) for each of contract months 13 through 24.

    (ii)    If the Agent does not qualify for the Maximum Commission Based Training Allowance (including any carryover from the First Contract Year) which may be paid with respect to the Second Contract Year, the difference between such maximum and the Commission Based Training Allowance actually paid with respect to the Second

#88118 v1 (04/04)

Contract Year will be added to the Maximum Commission Based Training Allowance which may be paid with respect to the Third Contract Year by dividing such difference by 12.

The result will then be (a) added to the maximum monthly Commission Based Training Allowance payment specified in the Maximum Commission Based Training Allowance Table (Table 2) for each of contract months 25 through 36, and (b) divided by .27 to determine the amount to add to the Net Eligible First Year Commissions required to qualify for the Maximum Commission Based Training Allowance specified in the Maximum Commission Based Training Allowance Table (Table 2) for each of contract months 25 through 36.

(iii)    There will be no carryover beyond the amount determined at the end of the Second Contract Year.

10.    **Life Case Rate Training Allowance Bonuses**

(a)    *Period of Life Case Rate Training Allowance Bonuses* – During the first Contract Year as defined in Section 3 above, the Agent may qualify for both monthly and quarterly Life Case Rate Training Allowance Bonuses. During the second Contract Year as defined in Section 3 above, the Agent may qualify for a quarterly Life Case Rate Training Allowance Bonus. Policies sold during the Agent's time under an Introductory Contract will be considered as policies sold during the Agent's Starting Contract Month under this Agreement.

(b)    *Life Case Rate Training Allowance Bonuses* – Subject to the terms of this Agreement, the Agent may be eligible to receive a Life Case Rate Training Allowance Bonus as of the last day of each contract month and as of the last day of each contract quarter in the first Contract Year. In the second Contract Year, the Agent may be eligible to receive a Life Case Rate Training Allowance Bonus as of the last day of each contract quarter subject to the terms of this Agreement. Any Life Case Rate Training Allowance Bonus with respect to a contract month or contract quarter, will be determined in accordance with the terms of this Agreement. The amount of any Life Case Rate Training Allowance Bonus for which the Agent qualifies is determined in accordance with the Life Case Rate Training Allowance Tables 3, 4, 5 and 6 below, on the basis of:

(i)    the Net Eligible Weighted Life Cases (as defined below) credited to the Agent with respect to both the current contract month and prior contract months, on applicable policies effected upon applications obtained by the Agent, and

(ii)    the Net Eligible Weighted Life Cases (as defined below) credited to the Agent with respect to both the current contract quarter and prior contract quarters, on applicable policies effected upon applications obtained by the Agent.

The definition of "Net Eligible Weighted Life Cases" is all life policies that are included under the definition of Net Eligible First Year Commissions as defined in section 9 above. For purposes of Net Eligible Weighted Life Cases, riders will not count as policies. No credit will be given with respect to policies on an Agent or any other Agent, or on the life of any of their family members (parent, brother, sister, spouse, or child).

An appropriate share of the case (cases not shared will receive full credit) will be credited to the Agent at a weight, set forth in this Agreement, dependent on the product type. The appropriate weights by product type follow:

| Product Type | Weight |
|---|---|
| Traditional Life | 1 |

- 9 -

#88113 v1 (04/04)

| | |
|---|---|
| Universal Life | 1 |
| Employee's Whole Life and Employee's Adjustable Life | 1/3 |

For purposes of this Agreement, a case will be credited to an agent when the policy is delivered and the premiums have been received and applied at the Company's Home Office, as described in Section 7 above.

(c) *Payment of monthly Life Case Rate Training Allowance Bonus*– If the Agent qualifies under the terms of this Agreement, a monthly Life Case Rate Training Allowance Bonus will be payable as of the last day of a contract month in the Agent's first Contract Year. In order to qualify for, and to receive a monthly Life Case Rate Training Allowance Bonus:

  (i) the Agent's Contract and this Agreement must be in full force and effect on the last day of such contract month, and

  (ii) the Net Eligible Weighted Life Cases, credited to the Agent with respect to the contract month must total not less than the minimum qualifying number specified in Table 3 – Minimum Monthly Life Case Rate Training Allowance Bonus, and

  (iii) the Net Eligible Weighted Life Cases, credited to the Agent with respect to the contract month plus all prior months must total not less than the Minimum Cumulative Net Eligible Weighted Life Cases Requirement specified in Table 3 below.

A monthly Life Case Rate Training Allowance Bonus will be payable as of the last day of a contract month only if all of the above requirements have been satisfied. The amount of such Life Case Rate Training Allowance Bonus will be credited to the agent's ledger. If, as of the last day of a contract month, the Agent fails to meet the requirements set forth above, no monthly Life Case Rate Training Allowance will be payable with respect to that month.

(d) *Calculation of monthly Life Case Rate Training Allowance* – The Life Case Rate Training Allowance payable with respect to a contract month will be equal to $25 per case credited to the Agent with respect to the Starting Contract Month, and/or credited to the Agent with respect to each of the succeeding twelve contract months numbered one through twelve, respectively, and will be subject to the minimum qualifications specified in the Minimum Monthly Life Case Rate Training Allowance Bonus Table (Table 3) below and subject to the maximum monthly Life Case Rate Training Allowance, specified in the Maximum Monthly Life Case Rate Training Allowance Bonus Table (Table 4) below.

*Exception for Contract Month One:* In determining the Life Case Rate Training Allowance Bonus for contract month one only, the following adjustments will be made:

  (1) The Net Eligible Weighted Life Cases for the Starting Contract Month will be added to those for contract month one only and this amount will be reduced by 4.0% (1/25) of any monthly Life Case Rate Training Allowance paid with respect to the Starting Contract Month, and

  (2) The Maximum Monthly Life Case Rate Training Allowance Bonus amount for contract month one will be reduced by the amount of Monthly Life Case Rate Training Allowance Bonus paid in the Starting Contract Month.

**Qualification Requirement for monthly Life Case Rate Training Allowance** - The Minimum Monthly Life Case Rate Training Allowance Bonus Table (Table 3) below sets forth the minimum

- 10 -

requirements with respect to each contract month in order for a monthly Life Case Rate Training Allowance Bonus to be paid. If the Net Eligible Weighted Life Cases credited to the Agent with respect to a contract month are less than the Minimum Net Eligible Weighted Life Cases Requirement or if the Agent does not meet the Minimum Cumulative Net Eligible Weighted Life Cases Requirement, the Agent will not receive a monthly Life Case Rate Training Allowance Bonus with respect to such contract month.

The Maximum Monthly Life Case Rate Training Allowance Bonus Table (Table 4) below sets forth the maximum monthly Life Case Rate Training Allowance which may be payable with respect to each contract month and the Net Eligible Weighted Life Cases required to be credited to the Agent with respect to each contract month in order for the Agent to qualify for the maximum monthly Life Case Rate Training Allowance with respect to such contract month. Net Eligible Weighted Life Cases credited to an Agent with respect to a contract month which are in excess of those set forth in Table 4 will produce no additional monthly Life Case Rate Training Allowance (except as provided in the Life Case Rate Catch-Up provision set forth in Section 10(e) below).

(e)     *Life Case Rate Catch-Up Provision*

(i)     If the agent does not qualify for the maximum monthly Life Case Rate Training Allowance Bonus as of the last day of one or more contract months during a contract quarter, the difference between the maximum cumulative monthly Life Case Rate Training Allowance which could have been paid through the contract month for that contract quarter and the total monthly Life Case Rate Training Allowance actually credited to the Agent's ledger up to that contract month during that contract quarter and payable to the Agent as of that month may be payable to the Agent provided in (e)(ii), below, if (a) the Net Eligible Weighted Life Cases credited to the Agent during that contract month equal at least the Minimum Net Eligible Weighted Life Cases Requirement specified in the Minimum Monthly Life Cases Rate Training Allowance Bonus Table (Table 3) for such month, and (b) the Agent has met at least the Minimum Cumulative Net Eligible Weighted Life Cases Requirement for that contract month.

If the requirements of (e)(i), above, are met, a Life Case Rate Catch-Up payment will be calculated as follows:

a)     Determine the total Net Eligible Weighted Life Cases actually credited to the agent within the current contract quarter. The Agent's Starting Contract Month is included in the Agent's first contract quarter.

b)     Multiply item a) by the plan payment per life case ($25) to calculate the total potential monthly Life Case Rate Training Allowance Bonus for the contract quarter.

c)     Determine the total monthly Life Case Rate Training Allowance and Life Case Rate Catch-Up actually paid within the contract quarter in the current contract month but excluding the Life Case Rate Catch-up in the current month.

d)     Determine the total cumulative maximum monthly Life Case Rate Training Allowance Bonus during the current contract quarter.

e)     The total Life Case Rate Catch-Up payable is equal to the difference, if any, between the minimum of items b) or d) over item c), but not less than zero.

- 11 -

**TABLE 3**

**Minimum Monthly Life Case Rate Training Allowance Bonus**

| Contract Month | Minimum New Net Eligible Weighted Life Cases Required to Qualify for Monthly Life Case Rate Training Allowance Bonus with Respect to Such Month | Minimum Cumulative Net Eligible Weighted Life Cases Requirement | Monthly Life Case Rate Training Allowance Bonus Amount Per Life Case | Monthly Life Case Rate Training Allowance Bonus for Contract Month if Required Minimums Are Met With Respect to such Contract Month |
|---|---|---|---|---|
| Starting | 3 | 0 | $25 | $75 |
| 1 | 3 | 3 | $25 | $150* |
| 2 | 3 | 6 | $25 | $75 |
| 3 | 3 | 9 | $25 | $75 |
| 4 | 3 | 12 | $25 | $75 |
| 5 | 3 | 15 | $25 | $75 |
| 6 | 3 | 18 | $25 | $75 |
| 7 | 3 | 21 | $25 | $75 |
| 8 | 3 | 24 | $25 | $75 |
| 9 | 3 | 27 | $25 | $75 |
| 10 | 3 | 30 | $25 | $75 |
| 11 | 3 | 33 | $25 | $75 |
| 12 | 3 | 36 | $25 | $75 |
| **Total First Contract Year ** | | | | $975 |

*The calculation of the Monthly Case Rate Training Allowance with respect to month one is set forth in Section 10(d).

**Solely if all requirements of this Agreement are complied with in each and every contract month.

- 12 -

#88118 v1 (04/04)

**TABLE 4**

**Maximum Monthly Life Case Rate Training Allowance Bonus**

| Contract Month | Net Eligible Weighted Life Cases Required to Produce Maximum Monthly Life Case Rate Training Allowance Bonus with Respect to Such Month | Monthly Life Case Rate Training Allowance Bonus Amount Per Life Case | Maximum Monthly Life Case Rate Training Allowance Bonus with Respect to Such Month |
|---|---|---|---|
| Starting | 6 | $25 | $150 |
| 1 | 6 | $25 | $300* |
| 2 | 6 | $25 | $150 |
| 3 | 6 | $25 | $150 |
| 4 | 6 | $25 | $150 |
| 5 | 6 | $25 | $150 |
| 6 | 6 | $25 | $150 |
| 7 | 6 | $25 | $150 |
| 8 | 6 | $25 | $150 |
| 9 | 6 | $25 | $150 |
| 10 | 6 | $25 | $150 |
| 11 | 6 | $25 | $150 |
| 12 | 6 | $25 | $150 |
| **Total First Contract Year \*\*** | | | **$1,950** |

*The calculation of the Monthly Life Case Rate Training Allowance with respect to month one is set forth in Section 10(d).

**Solely if all requirements of this Agreement are complied with in each and every contract month or if the requirements of the Life Case Rate Catch-Up provision are complied with where applicable.

#88118 v1 (04/04)

(f)    *Payment of quarterly Life Case Rate Training Allowance Bonus*– If the Agent qualifies under the terms of this Agreement, a Life Case Rate Training Allowance Bonus will be payable as of the last day of a contract quarter in the Agent's first two Contract Years. In order to qualify for, and to receive a quarterly Life Case Rate Training Allowance Bonus:

(i)    the Agent's Contract and this Agreement must be in full force and effect on the last day of such contract quarter, and

(ii)   the Net Eligible Weighted Life Cases, credited to the Agent with respect to the contract quarter must total not less than the minimum qualifying number specified in Table 5 – Minimum Quarterly Life Case Rate Training Allowance Bonus.

A quarterly Life Case Rate Training Allowance Bonus will be payable as of the last day of a contract quarter only if all of the above requirements have been satisfied. The amount of such Life Case Rate Training Allowance Bonus will be credited to the agent's ledger. If, as of the last day of a contract quarter, the Agent fails to meet the requirements set forth above, no quarterly Life Case Rate Training Allowance is payable, or will be payable with respect to that quarter.

The quarterly Life Case Rate Training Allowance Bonus payable may be increased by a predetermined amount if the above requirements are met and the Cumulative Net Eligible Weighted Life Cases, credited to the Agent with respect to the contract quarter plus all prior quarters in the Contract Year total no less than the Minimum Cumulative Net Eligible Weighted Life Cases specified in Table 6 below.

(g)    *Calculation of quarterly Life Case Rate Training Allowance* – The Life Case Rate Training Allowance that will be payable with respect to a contract quarter will be equal to:

(i)    a Bonus of $750 subject to the minimum qualifications specified in the Minimum Quarterly Life Case Rate Training Allowance Bonus Table (Table 5) below, plus

(ii)   an increase of $250 in the Agent's second and/or sixth contract quarters, $500 in the Agent's third and/or seventh contract quarters, and $750 in the Agent's fourth and/or eighth contract quarters subject to the minimum cumulative qualifications specified in the Quarterly Life Case Rate Training Allowance Increase Table (Table 6) below.

**Qualification Requirement for quarterly Life Case Rate Training Allowance** - The Minimum Quarterly Life Case Rate Training Allowance Bonus Table (Table 5) below sets forth the minimum requirements with respect to each contract quarter in order for the Agent to qualify for a quarterly Life Case Rate Training Allowance Bonus with respect to each quarter. If the Net Eligible Weighted Life Cases credited to the Agent with respect to a contract quarter are less than the Minimum Net Eligible Weighted Life Cases Requirement the agent will not receive a quarterly Life Case Rate Training Allowance Bonus with respect to such contract quarter.

The Quarterly Life Case Rate Training Allowance Increase Table (Table 6) below sets forth the minimum cumulative requirements with respect to each contract quarter in order for the Agent to qualify for an increase in the quarterly Life Case Rate Training Allowance Bonus with respect to each contract quarter. If the cumulative Net Eligible Weighted Life Cases credited to the Agent with respect to a contract quarter are less than the Minimum Net Eligible Weighted Life Cases Requirements or if the total Net Eligible Weighted Life Cases credited to the agent for the current contract quarter plus all prior contract quarters in the Contract Year do not equal at least the Minimum Cumulative Net Eligible Weighted Life Cases Requirement, the Agent will not receive an increase in the quarterly Life Case Rate Training Allowance Bonus with respect to such contract quarter.

- 14 -

**TABLE 5**
**Minimum Quarterly Life Case Rate Training Allowance Bonus**

| Contract Quarter | Minimum Net Eligible Weighted Life Cases Requirement to Qualify for Quarterly Life Case Rate Training Allowance Bonus with Respect to Such Quarter | Quarterly Life Case Rate Training Allowance Bonus |
|---|---|---|
| 1 | 18 | $750 |
| 2 | 18 | $750 |
| 3 | 18 | $750 |
| 4 | 18 | $750 |
| **Total Contract Year 1*** | | **$3,000** |
| 5 | 21 | $750 |
| 6 | 21 | $750 |
| 7 | 21 | $750 |
| 8 | 21 | $750 |
| **Total Contract Year 2*** | | **$3,000** |

**TABLE 6**
**Quarterly Life Case Rate Training Allowance Increase**

| Contract Quarter | Minimum Net Eligible Weighted Life Cases Requirement to Qualify for Quarterly Life Case Rate Training Allowance Bonus | Minimum Cumulative** Net Eligible Weighted Life Cases Requirement to Qualify for Quarterly Life Case Rate Training Allowance Increase with Respect to such Quarter | Quarterly Life Case Rate Training Allowance Bonus Increase Amount*** |
|---|---|---|---|
| 1 | 18 | N/A | N/A |
| 2 | 18 | 36 | $250 |
| 3 | 18 | 54 | $500 |
| 4 | 18 | 72 | $750 |
| **Total Contract Year 1*** | | | **$1,500** |
| 5 | 21 | N/A | N/A |
| 6 | 21 | 42 | $250 |
| 7 | 21 | 63 | $500 |
| 8 | 21 | 84 | $750 |
| **Total Contract Year 2*** | | | **$1,500** |

*Solely if all requirements of this Agreement are complied with in each and every contract month.

**Cumulative from the beginning of the Contract Year.

***Applicable only if all of the requirements under the Minimum Quarterly Case Rate Training Allowance Bonus have been met.

- 15 -

#88118 v1 (04/04)

11. The Company may prescribe such rules, regulations and procedures as it may deem appropriate to administer the provisions governing the compensation set forth in this Agreement, and such rules, regulations and procedures shall be deemed a part of this Agreement, as though their complete terms were set out herein, and it reserves and shall have the right to amend, change or modify the Agreement including the Training Allowance Tables at any time, by giving written notice of any such amendment, change or modification to the Agent. Any such amendment, change or modification will be effective as of the date of the written notice or when such notice so specifies, and any Training Allowance payments thereafter will be made in accordance with such amendment, change or modification.

12. **Automatic Termination of this Agreement**—Notwithstanding the provisions of Section 5 above, this Agreement will automatically terminate if:

   (a) the Agent does not qualify for any Commission Based Training Allowance payment for 4 consecutive contract months after contract month 5, except that this Agreement shall not automatically terminate if the total net first year commissions credited to the Agent's ledger with respect to any one of such 4 consecutive contract months exceed $500 a contract month with respect to any such month in the Agent's First Contract Year, $750 a contract month with respect to any such month in the Agent's Second Contract Year and $1,000 a month with respect to any such contract month in the Agent's Third Contract Year; or

   (b) the Agent's Contract (which this Agreement supplements) is terminated; or

   (c) the Agent engages in any other business or occupation for remuneration or profit; or

   (d) on the last day of the Agent's Third Contract Year unless earlier terminated by the Agent or the Company.

   (e) the Agent's license(s) are suspended or revoked by any governmental authority.

13. **Company Production Standards**—In addition to the Qualification Requirements for Commission Based Training Allowance set forth in this Agreement, the Agent shall be required to achieve certain production standards, which shall be identified in writing and distributed to the Agent. The failure of the Agent to achieve the production standards may result in the termination of this Agreement, however the Company, in its sole discretion, reserves the right to forego its right to terminate this Agreement by virtue of the Agent's failure to achieve the production standards.

14. **Policies Sold Under the Company's Sponsored Marketing Agreements With Other Companies -** Notwithstanding the other provisions of this Agreement relating to termination, this Agreement shall terminate at the end of any Contract Year in which the first year commissions credited to the Agent's ledger during that Contract Year, based on sales of policies offered under any of the Company's Sponsored Marketing Agreements with other companies, equal or exceed 50% of the total first year commissions, earned from the sale of individual products, credited to the agent's ledger during the Contract Year.

15. Notwithstanding any provision to the contrary in the Agent's Contract which this Agreement supplements, said Agent's Contract shall terminate immediately if this Agreement is terminated pursuant to Section 12(c) or (e), above.

16. Notwithstanding any provision to the contrary in the Agent's Contract which this Agreement supplements, if the services of the Agent are terminated for any reason, before or after the completion of the Period of Commission Based Training Allowance Payments, no further payments of any kind, either under this Agreement or under the Agent's Contract, will be made on account of policies effected upon applications obtained by the Agent while this Agreement is in force, or while any Introductory Contract was in force if applicable, except with respect to commissions on premiums received by the Company

- 16 -

prior to the termination of this Agreement or the Agent's Contract and except with respect to any Life Case Rate Bonus payable for any completed Contract Month.

17.    The Company is hereby given a paramount and prior lien upon any Commission Based Training Allowance and/or commissions or Bonuses payable under this Agreement as security for the payment of any claim or indebtedness or reimbursement whatsoever due or to become due to the Company from the Agent. Any sums becoming due the Agent at any time may be applied directly by the Company to the liquidation of any indebtedness or obligation of the Agent to the Company, but the failure to so apply any sum shall not be deemed a waiver of the Company's lien on any other sums becoming due or impair its right to so apply such sums.

18.    Any failure of the Company in any instance to insist upon compliance with any of the limitations, terms, provisions and conditions of this Agreement shall not be construed as a waiver of any of the Company's rights or of such limitations, terms, provisions and conditions, or the right by the Company to thereafter enforce its rights or insist upon such compliance.

19.    The Agent shall obtain and maintain errors and omissions insurance coverage in an amount not less than $1 million per occurrence. Coverage must be obtained by the earlier of the end of the Agent's First Contract Year or at the time the Agent enters into a Registered Representative's Agreement and must be maintained as long as the Agent's Contract remains in effect. The Company reserves the right to change the amount of coverage at any time by giving written notice to the Agent.

20.    After completion of the Third Contract Year, if the Agent continues thereafter to represent the Company as an Agent, the Agent's Contract will be in full force and effect, subject to its terms, and the Agent's relation to the Company will be that of an independent contractor, as provided in said Agent's Contract, free to exercise the Agent's own discretion and judgment with respect to the persons from whom the Agent will solicit applications, and with respect to the time, place, method and manner of solicitation or performance under said Agent's Contract.

21.    This Agreement will take effect as of the effective date stated above, if duly signed by the Agent and countersigned on behalf of the Company.

Witnessed by_____

                                        _____
                                                    Agent

                            NEW YORK LIFE INSURANCE COMPANY
                            NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION
                            NYLIFE INSURANCE COMPANY OF ARIZONA

                            by:

                            *Paul B. Morris*

                            Paul B. Morris
                            Senior Vice President in Charge of the Agency Department

Countersigned by New York Life
Insurance Company, New York Life
Insurance and Annuity Corporation and
NYLIFE Insurance Company of Arizona

on _____
by _____
Title _____

- 17 -

EXHIBIT B



**NEW YORK LIFE INSURANCE COMPANY**
51 Madison Avenue, New York, NY 10010

**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION**
(A Delaware Corporation)
51 Madison Avenue, New York, NY 10010

**NYLIFE INSURANCE COMPANY OF ARIZONA**
(An Arizona Corporation)
4343 N. Scottsdale Road, Suite 220, Scottsdale, AZ 85251

**AGENT'S CONTRACT**
(Form N9 - 04/04)

Agent: _____

Address: _____
    (Street)                        (City)      (State)    (Zip)

General Office: _____

Effective Date: _____

New York Life Insurance Company, New York Life Insurance and Annuity Corporation, and NYLIFE Insurance Company of Arizona (hereinafter collectively "New York Life") hereby authorize the Agent named above (hereinafter "the Agent"), to solicit applications for individual life insurance policies, individual annuity policies, individual health insurance policies, group insurance policies, and group annuity policies, all on such plans as are issued by New York Life at the time and place such applications are obtained. It is mutually agreed that this authority to act as a soliciting agent of New York Life is granted by New York Life and accepted by the Agent upon the following limitations, terms, provisions and conditions:

1.    The Agent shall conduct the Agent's business with New York Life through the General Office named above until further written notice from New York Life. The Agent shall have no authority to solicit applications or conduct business in any jurisdiction unless New York Life and the Agent are duly licensed under the laws of such jurisdiction to sell such business and act as such soliciting agent, respectively. The Agent shall have no exclusive right to solicit applications in any territory.

2.    The Agent shall have no authority for or on behalf of New York Life to accept risks of any kind, to make, modify or discharge contracts, to extend the time for paying any premium, to bind New York Life by any statement, promise or representation, to waive forfeitures or any of New York Life's rights or requirements, or to place New York Life under any legal obligation by any act which is not within the authority granted by New York Life in this contract or otherwise in writing.

3.    The Agent is authorized to collect premiums on behalf of New York Life only as follows:

(a)    In connection with each application obtained by the Agent, including any supplementary application, the Agent may collect an amount not exceeding the full first premium for the policy applied for, or not exceeding the single premium if a single premium policy is applied for, but only if the Agent delivers to the applicant in exchange therefor the coupon receipt attached to the application and corresponding therewith in date and number; and

(b)    If the full first premium is not paid when the application is taken, the Agent shall collect any unpaid balance of all premiums due New York Life as of the delivery date; and

(c)  In the interval between the dates on the application and delivery, the Agent may collect an amount equal to the unpaid balance or the first full premium, by using the proper amendment to the application provided by the Company; and

(d)  In connection with a change of, the conversion of, the reinstatement of, or the addition of a rider to, an in-force policy, the Agent may collect the amount charged the policyowner by New York Life for completing the change, conversion, reinstatement or addition; and

(e)  The Agent may collect an amount equal to the premium in advance in accordance with the Company's rules; and

(f)  The Agent may collect, consistent with the Company's policy, subsequent premium payments (non-cash) and additional non-cash deposits for insurance and annuity products.

Except as authorized above, the Agent shall have no authority to receive or collect for New York Life any premiums or other moneys due or to become due to it.

4.    All moneys received by the Agent for or on behalf of New York Life shall be received by the Agent in a fiduciary capacity, and shall not be used for any personal or other purpose whatsoever but shall be immediately paid over to New York Life. When requested by New York Life to do so, the Agent shall advise New York Life, in writing, with respect to the circumstances under which the Agent delivered any policy and, with respect to any policy given to the Agent for delivery on which New York Life has not received any premium, whether the policy has been delivered or remains in the Agent's possession and whether the Agent has collected any premium on the policy.

5.    Neither the term "Agent" (used in this Agent's Contract solely for convenience in designating one of the parties) nor anything contained in this Agent's Contract or in any of the rules or regulations of New York Life shall be construed as creating the relationship of employer and employee between New York Life and the Agent. Subject to the provisions of this Agent's Contract and within the scope of the authority granted by this Agent's Contract, the Agent, as an independent contractor, shall be free to exercise the Agent's own discretion and judgment with respect to the persons from whom the Agent will solicit applications, and with respect to the time, place, method and manner of solicitation and of performance under this Agent's Contract. The Agent agrees not to engage in conduct that will affect adversely the good standing or reputation of New York Life. Furthermore, the Agent:

(a)  Shall be treated as an independent contractor for all purposes, including but not limited to federal and state taxation, withholding (other than Federal Insurance Contributions Act (FICA) taxes required for full time life insurance agents pursuant to Section 3121(D)(3) of the Federal Internal Revenue Code), unemployment insurance and workers' compensation;

(b)  Shall be paid a commission based on his/her sales activity, without deduction for taxes (other than FICA taxes required for full time life insurance agents pursuant to Section 3121(D)(3) of the Federal Internal Revenue Code), which commission shall be directly related to sales or other output;

(c)  Shall not receive any remuneration related to the number of hours worked;

(d)  Shall be permitted to work any hours that the Agent chooses;

(e)  Shall be permitted to work out of the Agent's office or home, or a New York Life General Office; and

(f)  May be provided with office facilities, clerical support, and certain supplies, but Agent shall otherwise bear Agent's own expenses, including but not limited to automobile, travel and entertainment expenses.

New York Life shall comply with the provisions of this Section 5 and any regulations pertaining thereto, but such compliance shall not affect Agent's status as an independent contractor nor should it be construed as an indication that Agent is an employee of New York Life.

6. The Agent hereby (a) acknowledges receipt of the Agent/Registered Representative's Handbook (hereinafter "Handbook"), and agrees to observe and abide by the limitations of authority and the rules specified in or issued as supplements to the Handbook that apply generally to Agents of New York Life; (b) agrees that the Agent's rights to receive commissions and service fees as provided in this Agent's Contract shall be further subject to the rules relating to commissions and service fees as contained in the Handbook, or other published New York Life rules; and (c) agrees that, under the circumstances stated in the Handbook, the Agent shall be liable for payment of the fees, charges and payments specified in the Handbook. The agreements contained in this Section 6 shall extend to any changes or additions to said limitations and rules, whether published in a new Handbook or otherwise given to the Agent by written notice, but no rule hereafter adopted shall be construed so as to restrict the Agent's right to direct and control the Agent's work in performance of this Agent's Contract.

7. The Agent agrees to comply with New York Life's published rules relating to continuing education and agrees that New York Life may amend such rules from time to time.

8. To the fullest extent allowed by law, the Agent agrees to reimburse New York Life for all attorney's fees, costs, expenses, losses, damages and liability of every kind which New York Life may at any time incur or pay on account of:

(a) Any claim arising from or related to any misconduct, error, act or omission, or other unauthorized act by the Agent or any of the Agent's employees.

(b) Any breach by the Agent of any terms or provisions of this Agent's Contract or any of New York Life's procedures, rules or guidelines.

(c) Any assignment, garnishment, attachment or other legal process or order of any kind arising from or related to this Agent's Contract or any other agent's contract.

(d) The Agent's failure, upon termination of this Agent's Contract pursuant to Sections 10 or 11 hereof, to immediately turn over to the Company all client files, whether in paper, electronic, or any other format.

9. New York Life is hereby given a paramount and prior lien upon all compensation payable under or as a result of this or any previous agent's contract and under any and all agreements amendatory or supplementary to this Agent's Contract as security for the payment of any claim or indebtedness or reimbursement whatsoever due or to become due to New York Life from the Agent without limitation of New York Life's other legal or equitable remedies as regards such indebtedness or reimbursement, including, but not limited to, the right to charge interest and to recover the cost of any collection and attorney's fees. Any sums becoming due to the Agent at any time may be applied, directly, by New York Life to the liquidation of any indebtedness or obligation of the Agent to New York Life, but the failure to so apply any sum shall not be deemed a waiver of New York Life's lien on any other sums becoming due nor impair its rights to so apply such sums.

10. Either the Agent or New York Life may, with or without cause, terminate this Agent's Contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated.

11. In addition to the right of New York Life to terminate this Agent's Contract as provided in Section 10 above, New York Life shall have the right, at its option, to terminate this Agent's Contract for cause immediately upon giving written notice of such termination to the Agent, for any one or more of the following:

(a) The collection or receipt by the Agent of any moneys for or on behalf of, or due or to become due to, New York Life except as authorized in Section 3 above.

(b) Any unauthorized appropriation to the Agent's own use and purpose of any money or other property received by the Agent for or on behalf of New York Life or received by the Agent for the benefit of a person other than the Agent.

(c) The submission to New York Life by the Agent of any document on which any required signature is not a genuine or duly authorized signature.

(d)    Any withholding by the Agent of any policy or document after such policy or document shall have been demanded by the New York Life.

(e)    Any act of the Agent by which the Agent, directly or indirectly, sells or offers to sell to any person or persons, policies issued by New York Life at any deviation from the published rates of New York Life as furnished to the Agent by New York Life from time to time.

(f)    A violation by the Agent of the anti-rebate or improper inducement laws of any state or jurisdiction.

(g)    A violation by the Agent of any federal or state law, rule or regulation or the rules or regulations of any other regulatory authority.

(h)    A violation by the Agent of any of New York Life's policies, procedures, rules or guidelines.

(i)    Revocation or suspension by any state or jurisdiction of the agent's license to act as a soliciting agent, or, if applicable, as a registered representative or investment advisor representative.

The above-listed grounds for termination are for illustrative purposes only and shall not serve to limit the grounds upon which a "for cause" termination may be based.

12.    Any failure of New York Life in any instance to terminate this Agent's Contract when cause for such termination exists, or to insist upon compliance with any of the limitations, terms, provisions and conditions of this Agent's Contract, shall not be construed as a waiver of any of New York Life's rights or of any such limitations, terms, provisions and conditions, or of the right of New York Life to thereafter enforce its rights or insist upon such compliance.

13.    (a)    In the course of the Agent's performing his/her duties as a New York Life agent, New York Life may disclose to the Agent, the Agent may have or be given access to, or the Agent may develop, certain confidential information, proprietary information and/or trade secrets of New York Life (hereinafter collectively, "Confidential Information"). Unless otherwise excluded in this provision, Confidential Information shall mean any and all information provided by New York Life to the Agent or to which the Agent has or is given access, in whatever form, verbal or otherwise, including, but not limited to, customer and prospective customer information and data (including, but not limited to client lists and files), equipment, material, records, supplies, manuals, business plans, marketing plans, financial records and analyses, rate books, marketing-sales-pricing data, forms, lists, files, data, designs, reports, research, technical specifications, agreements, proprietary information, trade secrets and intellectual property whether or not identified as "Confidential Information," in whatever media, electronic or otherwise, and any other materials identified in writing as "Confidential Information."

(b)    The term "Confidential Information" shall not apply to information that:

(i)    has been legally in the Agent's possession prior to its disclosure to the Agent by New York Life and is not subject to any non-disclosure obligations;

(ii)    has become part of the public domain through no fault of the Agent;

(iii)    has been developed subsequent to, and independent of, disclosure to the Agent by New York Life; or

(iv)    has been released in writing by New York Life for public disclosure, or is otherwise deemed by New York Life, in writing, to no longer be confidential.

(c)    The Agent will not, without the prior written consent of New York Life, remove from New York Life's premises, copy or disclose Confidential Information to any third party, or otherwise jeopardize the confidential nature of the Confidential Information, and the Agent will not use New York Life's Confidential Information other than for the purposes of performing the duties specified in this contract. The Agent will hold all Confidential Information in strictest confidence, and such Confidential Information will not be copied, reproduced or altered either in whole or in part by any method whatsoever, unless agreed upon in advance and in writing by an executive officer of New York Life.

(d) Upon the voluntary or involuntary termination of this Agent's Contract for any reason, including but not limited to the Agent's resignation or retirement, the Agent agrees to immediately surrender to New York Life or its designee the original and any copies, notes, recordings, transcriptions or any other reproductions of Confidential Information, in any form whatsoever, regardless of whether or not the Agent has retained it in his/her personal possession. The Agent's obligations hereunder regarding Confidential Information shall survive the return of such Confidential Information or the voluntary or involuntary termination of this contract. Both during the term of this Agent's Contract and after its termination, the Agent also agrees not to divulge Confidential Information to, share such information with, or permit access to it by, any individual or organization not then currently engaged or employed by New York Life.

14. (a) Within any jurisdiction(s) in which the Agent, during the term of this Agent's Contract, has been licensed to sell insurance, annuities or securities for New York Life or any of its subsidiary or affiliated companies, and during and for eighteen (18) months following the voluntary or involuntary termination of this Agent's Contract for any reason, including but not limited to the Agent's resignation or retirement:

(i) The Agent will not in any way directly or indirectly advise, induce or assist any customer of New York Life or any of its subsidiary or affiliated companies, be it a person, a company or an organization, to reduce, replace, lapse, surrender, cancel or otherwise relinquish any insurance, annuities or securities products obtained from or through New York Life or any of its subsidiary or affiliated companies; nor will the Agent in any way directly or indirectly make use of any Confidential Information (as that term is defined in Section 13 hereof) in order to enable a third party not associated with New York Life to advise, induce or assist any customer of New York Life or any of its subsidiary or affiliated companies, be it a person, a company or an organization, to reduce, replace, lapse, surrender, cancel or otherwise relinquish any insurance, annuity or securities products obtained from or through New York Life or any of its subsidiary or affiliated companies.

(ii) The Agent will not in any way directly or indirectly induce or assist in any way in the inducement or attempted inducement of, any agent or employee of New York Life to leave New York Life or in any way modify his/her relationship with New York Life; nor will the Agent directly or indirectly, hire or contract with, or cause others to hire or contract with, any employees or agents of New York Life; nor will the Agent directly or indirectly, participate, encourage or assist in the hiring or contracting process for any other company of any employees or agents of New York Life.

(iii) The Agent will promptly inform New York Life of the identity of any of his or her subsequent employers (whether the Agent is engaged as an independent contractor or employee) which are engaged in the business of insurance, along with the Agent's new title and a description of the Agent's new position; and the Agent hereby authorizes New York Life to present a copy of this Agreement to any such employer.

(b) Without prejudice to whatever other recourse New York Life may have in the event that the Agent violates any provision of Sections 13 or 14 hereof, including without limitation, an action in damages, New York Life shall have the right to obtain equitable relief where necessary to prevent violations of Sections 13 or 14 hereof. Such relief shall include, but not be limited to, temporary restraining orders and temporary or preliminary injunctions. The Agent hereby acknowledges that, in the event of any such violation, New York Life will suffer irreparable harm and that an injunction is therefore a necessary remedy under the circumstances.

15. (a) The Agent and New York Life agree that any dispute, claim or controversy arising between them, including those alleging employment discrimination (including sexual harassment and age and race discrimination) in violation of a statute (hereinafter "the Claim"), as well as any dispute as to whether such Claim is arbitrable, shall be resolved by an arbitration proceeding administered by the NASD in accordance with its arbitration rules.

(b) In the event that the NASD refuses to arbitrate the Claim, the Agent and New York Life agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall be resolved by an arbitration proceeding administered by the American Arbitration Association (hereinafter "AAA") in accordance with its National Rules for the Resolution of Employment Disputes (hereinafter "NRRED"). The

arbitration shall be conducted at a location designated by AAA, which location shall be within fifty (50) miles of the New York Life General Office to which the Agent is or was most recently assigned. If the amount of the claim is $50,000 or less, exclusive of extracontractual, extracompensatory, punitive and exemplary damages, the dispute shall be heard by one arbitrator appointed in accordance with the NRRED. If the amount of the claim exceeds $50,000, exclusive of extracontractual, extracompensatory, punitive and exemplary damages, a three-person arbitration panel shall hear the arbitration with one arbitrator being selected by each party and the third, who shall act as chairperson, appointed in accordance with the NRRED. After the panel of three arbitrators has been selected for the case, the parties may agree to have one of the arbitrators serve as the single arbitrator who will hear the case.

(c)     In either event, within thirty (30) days, the arbitrator(s) shall issue a written decision explaining the basis for their decision and/or award. Judgment upon the written award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.

(d)     Exclusive of Claims alleging employment discrimination (including sexual harassment and age and race discrimination) in violation of a statute, the costs and expenses of the arbitrators for any arbitration shall be split evenly between the Agent and New York Life.

(e)     Notwithstanding the other provisions of this Section 15, New York Life shall be entitled to seek judicial relief of an equitable nature from any court of competent jurisdiction where necessary to prevent violations of Sections 13 or 14 hereof. Such relief shall include, but not be limited to, temporary restraining orders, and temporary or preliminary injunctions.

16.     If New York Life is successful in any proceeding or suit against the Agent to enforce any provision Sections 13 or 14 hereof, or brought to establish damages sustained by New York Life as a result of the Agent's violation of any provision of Sections 13 or 14 hereof, the Agent agrees to reimburse New York Life for legal fees and other expenses incurred by or on behalf of New York Life relating to or in connection with enforcing the terms of Sections 13 or 14.

17.     Except for the right to receive commissions, the rights, interests and claims of the Agent against New York Life arising under or growing out of this Agent's Contract are not assignable, and no assignee shall acquire any rights thereto, without the written consent of New York Life. The right to receive commissions under this Agent's Contract may be assigned without the written consent of New York Life, but New York Life must receive reasonable proof of such assignment before it commences payment to an assignee. In no event shall New York Life be obligated to make a payment to an assignee that is prohibited by applicable law. The rights of an assignee under any assignment to which consent has been or may be given or to an assignment of the right to receive commissions, shall be subject to the paramount and prior lien given to New York Life by Section 9 above.

18.     **Commissions on Individual Life Insurance, Individual Health Insurance and Individual Annuity Policies—** New York Life shall pay to the Agent, subject to all the limitations, terms, provisions and conditions of this Agent's contract, commissions on premiums received by New York Life under individual life insurance, individual health insurance and individual annuity policies issued as a result of applications obtained by the Agent while this Agent's Contract is in force, such commissions being at the applicable rates and for the policy years, or portions thereof, and under the rules and conditions as specified for agents operating under Agent's Contract (Form N9) in New York Life's schedules of first year and renewal commission rates in force at the time the applications are obtained unless specified otherwise, in writing, by New York Life. A copy of such schedules will be available for the Agent's inspection at any reasonable time at the General Office named above. New York Life reserves the right to change compensation, in whole or in part, at any time by giving written notice to the Agent and the new rates, policy years, rules and conditions will apply as set forth in the schedules.

On all types and plans of individual life insurance, individual health insurance and individual annuity policies that New York Life may issue and that are not included in the schedules of first year and renewal commission rates, or although included in such schedules are issued under special underwriting terms and conditions, the commissions shall be such as shall be designated in writing by a duly authorized Executive Officer of New York Life.

19. **Service Fees on Individual Life and Individual Health Insurance Policies**—New York Life shall pay to the then current agent of record, subject to all the limitations, terms, provisions and conditions of this Agent's Contract, service fees on premiums received by New York Life under individual life and individual health insurance policies, such service fees being at the applicable rates and for the policy years, or portions thereof, and under the rules and conditions as specified for agents operating under Agent's Contract (Form N9) in New York Life's schedules of first year and renewal commission rates in force at the time the policy applications are obtained unless specified otherwise, in writing, by New York Life.

A service fee will be paid to the then current agent of record only if, at the time the fee is payable,

(a) the policy for which the fee is payable is in force, and

(b) the agent of record is operating under an Agent's Contract with New York Life, and

(c) the agent of record is servicing the policy in a manner satisfactory to both the policyowner and New York Life. New York Life's decision shall be controlling in any dispute as to whether service is being provided in a satisfactory manner.

20. **Compensation on Group Insurance Policies, and Group Annuity Policies**—New York Life shall pay to the Agent, subject to all the limitations, terms, provisions and conditions of this Agent's Contract, compensation on premiums received by New York Life under group insurance policies and on considerations received by New York Life under group annuity policies effected upon applications obtained through the solicitation of the Agent while this Agent's Contract is in force. The amount of such compensation will be determined in accordance with New York Life's compensation rates and rules in force at the time such policy takes effect. A copy of such compensation rates and rules will be available for the Agent's inspection at any reasonable time at the General Office named above.

New York Life reserves the right to change compensation, in whole or in part, at any time without notice to the Agent, and the new rates, policy years, rules and conditions will apply to premiums received on coverage which becomes effective after any such change takes effect.

Compensation with respect to (a) group insurance additions, extensions, liberalizations, reinstatements or replacements, and (b) group insurance underwritten jointly by New York Life and another insurer or reinsured, in whole or in part, by another insurer or by New York Life, shall be determined in accordance with New York Life's rules and regulations, whether published or unpublished, which are in effect at the time of the addition, change or underwriting.

21. Should New York Life, in its sole discretion, deem it appropriate at any time to cancel a policy and refund any premium on which the Agent received any payment, such payment shall be charged back to the Agent and shall constitute an indebtedness of the Agent to New York Life and may be debited against the Agent's ledger.

22. Any commissions payable under this Agent's Contract after the Agent's death shall be credited to the Agent's account, as they become due, and be payable to the Agent's executors, administrators or assigns after deduction therefrom of any indebtedness or obligation of the Agent to New York Life.

23. Nothing in this Agent's Contract, or any amendment or supplement to this Agent's Contract, nor in any of the printed literature or forms of New York Life shall impair New York Life's right to the full and free exercise of its judgment in acting upon any application for an insurance or annuity policy; and the Agent shall have no right to any commission for submitting any application upon which no insurance or annuity policy is effected with New York Life.

24. Written notice to the Agent under this Agent's Contract or any amendment or supplement to this Agent's Contract may be given by mail or by publication in any official publication or bulletin of New York Life or by any other means, except that a notice under Section 10 or Section 11 above shall not be given by means of such publication. If the written notice to the Agent is given by mail, it shall be deemed to have been given when duly addressed and mailed to the last known post office address of the Agent, postage prepaid. If such notice is given by publication, it shall be deemed to have been given whenever published as above.

25.   This Agent's Contract shall take effect as of the effective date stated on Page 1 hereof, if duly signed by the Agent and countersigned on behalf of New York Life.

26.   The provisions of this Agent's Contract shall be considered severable and independent of each other and in the event that any provision of this Agent's Contract is found to be invalid or unenforceable, the remaining provisions of this Agent's Contract shall remain in full force and effect.

27.   To the fullest extent allowed by law, this Agent's Contract shall be governed by and interpreted in accordance with the laws of the State of New York without regard to conflict of law rules. In the event that both the NASD and AAA decline to arbitrate any dispute hereunder in accordance with Section 15 hereof, each of the parties to this Agent's Contract consents to the exclusive jurisdiction and venue of the state and federal courts within the state of New York for any action arising out of this Agent's Contract, except such action as may be necessary by New York Life to protect, preserve and/or realize its interest in the Agent's assets located in another jurisdiction.

28.   At the Agent's expense, the Agent shall obtain and maintain errors and omissions insurance coverage from the New York Life-Sponsored Professional Liability Policy or an "A"-rated insurance carrier in an amount equal to not less than $1 million per occurrence/$3 million annual aggregate. This coverage must be obtained by the earlier of the end of the Agent's First Contract Year or at the time the Agent enters into a Registered Representative's Agreement with New York Life's affiliated broker-dealer and must be maintained as long as this Agent's Contract remains in effect. If the Agent is not enrolled in the New York Life-Sponsored Professional Liability Policy, the Agent must purchase at his/her expense an extended reporting period endorsement to his/her errors and omissions policy that covers at least five years if: i) this Agent's Contract is terminated for any reason; or ii) his/her errors and omissions coverage is terminated or cancelled and not replaced with comparable coverage that includes prior acts. New York Life reserves the right to change the amount of required coverage at any time by giving written notice to the Agent. Failure to comply with this provision will constitute grounds for the immediate termination of this Agent's Contract.

29.   The first Contract Year under this Agent's Contract will commence on the effective date in the calendar month stated on Page 1 hereof and will end in the next succeeding year on the last day of the calendar month specified in said effective date. Each subsequent Contract Year shall be a period of twelve (12) consecutive calendar months ending in each succeeding year on the last day of the calendar month so specified. It is understood and agreed for all purposes of the Agent's association with New York Life that any policies effected upon applications obtained by the Agent while any Introductory Contract was in force immediately prior to the effective date of this Agent's Contract, shall be deemed to have been obtained during the first Contract Year, as defined above.

30.   The following Sections shall survive termination of this Agent's Contract by either party for any reason: 8, 9, 12, 13, 14, 15, 16, 27 and 28.

**IN WITNESS WHEREOF,** the parties to this Agent's Contract have subscribed their names hereto and to a duplicate hereof.

Witnessed by _____

_____
                    Agent

NEW YORK LIFE INSURANCE COMPANY
NEW YORK LIFE INSURANCE AND
    ANNUITY CORPORATION
NYLIFE INSURANCE COMPANY OF ARIZONA

by:

*Paul B. Morris*

Paul B. Morris
Senior Vice President in Charge of the Agency Department

Countersigned by New York Life
Insurance Company, New York Life
Insurance and Annuity Corporation and
NYLIFE Insurance Company of Arizona

on _____

by _____

Title _____

**EXHIBIT B**

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
04/18/2007
Log Number 512145398

**TO:**    Michael DeMicco
New York Life Insurance Company
51 Madison Avenue
New York, NY, 10010

**RE:**    **Process Served in California**

**FOR:**    New York Life Insurance Company (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Olga Ortmann, as an individual and on behalf of all others similarly situated, Pltf. vs. New York Life Insurance Company, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Notice of Hearing |
| **COURT/AGENCY:** | Alameda County, Oakland, Superior Court, CA<br>Case # RG07317476 |
| **NATURE OF ACTION:** | Employee Litigation - Class Action - Hearings have been scheduled |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/18/2007 at 13:42 |
| **APPEARANCE OR ANSWER DUE:** | 05/11/2007 at 2:00 p.m. - Complex Determination // 06/11/2007 at 2:00 p.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Stanley D. Saltzman<br>Marlin & Saltzman<br>29229 Canwood Street<br>Suite 208<br>Agoura Hills, CA, 91301-1555<br>818-991-8080 |
| **REMARKS:** | Refer to previous log # 512119606 forwarded on 04/10/2007. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight, 798155565980 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Dianne Christman<br>818 West Seventh Street<br>Los Angeles, CA, 90017<br>213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

# MARLIN & SALTZMAN
A Professional Law Corporation

LOS ANGELES OFFICE
Canwood Corporate Center
29229 Canwood Street
Suite 208
Agoura Hills, CA 91301
(818) 991-8080 Fax: (818) 991-8081

ORANGE COUNTY OFFICE
Irvine Technology Center
3200 El Camino Real
Suite 100
Irvine, CA 92602
(714) 669-4900 Fax: (714) 669-4750

April 18, 2007

STANLEY D. SALTZMAN
Attorney at Law

Reply To: Los Angeles Office
email: ssaltzman@marlinsaltzman.com

*Via Hand Delivery*

RECEIVED

APR 2 0 2007

OFFICE OF THE GENERAL COUNSEL
LITIGATION SECTION

CT Corporation System
818 West Seventh Street
Los Angeles, California   90017

RE: ***Olga Ortmann v. New York Life Insurance Company and New York Life Insurance and Annuity Corporation***
Alameda County Superior Court Case No. RG07317476
Our File No. 90-0196

Gentlepersons:

On April 10, 2007, you were served with the Summons, Complaint, and Civil Case Cover Sheet on behalf of Defendant ***New York Life Insurance Company*** in the above-referenced case.

Attached find a "Notice of Hearing" in this case which we are now serving on said Defendant.

Very truly yours,

**MARLIN & SALTZMAN**

STANLEY D.  SALTZMAN
/sll
Enclosure

MARLIN & SALTZMAN
Attn: Saltzman, Stanley D.
29229 Canwood Street
Suite 208
Agoura Hills, CA   91301-1555

New York Life Insurance Company, a
corporation

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Ortmann

                                   Plaintiff/Petitioner(s)
                          VS.

New York Life Insurance Company
                                   Defendant/Respondent(s)
                          (Abbreviated Title)

No. RG07317476

NOTICE OF HEARING

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and
time noted below:

Complex Determination Hearing:
DATE: 05/11/2007   TIME: 02:00 PM   DEPARTMENT: 22
LOCATION: Administration Building, Fourth Floor
          1221 Oak Street, Oakland

Case Management Conference:
DATE: 06/11/2007   TIME: 02:00 PM   DEPARTMENT: 22
LOCATION: Administration Building, Fourth Floor
          1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 4.2 (Unified Rules of the
Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation
Determination Hearing and Initial Complex Case Management Conference.

Department 22 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb).
For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at
(510) 272-6157.  Please consult Appendix E to Local Rules 4 and 5 of the Unified Rules of the
Superior Court, County of Alameda, concerning the tentative ruling procedures for Department22.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this
notice on all parties omitted from this notice or brought into the action after this notice was
mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex
Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement
may result in sanctions.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be

scheduled for hearing in Department 22.

If the information contained in this notice requires change or clarification, please call the courtroom clerk for Department 22 at (510) 272-6157.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CONFERENCE CALL SERVICES, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 527-7327, or faxing a service request form to (800) 833-5133. This service is subject to charges by the vendor.

Dated:  04/10/2007

Executive Officer / Clerk of the Superior Court

By _____

_____
Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/10/2007.

By _____

_____
Deputy Clerk

Page 1 of 1

FROM: Bjorn Flor (213)337-4615
CT – Los Angeles SOP Team
818 West Seventh Street

Los Angeles, CA 90017

TO: **Michael DeMicco (212)576-4452**
**New York Life Insurance Company**
**51 Madison Avenue**

**New York, NY 10010**
Ref: SOP/0413900/512145398/Bjorn Flor



FedEx Revenue Barcode

CAD#: 8318648
SHIP DATE: 19APR07
WEIGHT: 1 LB

DELIVERY ADDRESS (FedEx-EDR)

TRK # 7981 5556 5980     FORM 0201

10010    -NY-US

**STANDARD OVERNIGHT**

EWR

# 06 NBPA

FRI
A1
Deliver by:
20APR07

CLS022307